UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------

UNITED STATES OF AMERICA

v.                                                                25 Cr. 318 (JPO)

CHRISTINE HUNSICKER


-------------------------------------------------

**APPENDIX TO DEFENDANT CHRISTINE
HUNSICKER'S SENTENCING MEMORANDUM
(PART B)**

Michael N. Levy
Elizabeth L. Martin
ELLERMAN ENZINNA LEVY PLLC
1050 30th Street, NW
Washington, DC 20007
Tel: (202) 753-5553
mlevy@eellaw.com
emartin@eellaw.com

Anna M. Skotko
SKOTKO LAW PLLC
29 Broadway, Floor 31
New York, NY 10006
Tel: (646) 396-5251
anna@skotkolaw.com

*Counsel for Christine Hunsicker*

**APPENDIX**
**TABLE OF CONTENTS**

Report of Dr. Sarah Schaffer ................................................................... A.1

Dr. Sarah Schaffer Curriculum Vitae........................................................ A.84

April 29, 2018 Email Correspondence....................................................... A.91

Letters of Support

    Monica Graham ................................................................... A.92

    Investor 2 ........................................................................... A.101

    Investor 3 ........................................................................... A.102

    Investor 4 ........................................................................... A.106

    Cynthia Joseph.................................................................... A.107

    Melissa Robinson................................................................ A.112

    Emma Hutchens.................................................................. A.116

    Ellen Goldberg................................................................... A.118

    Vivian Polack..................................................................... A.120

    Gregory Lewis ................................................................... A.122

    Gamblers Anonymous Member 1 ......................................... A.125

    Gamblers Anonymous Member 2 ......................................... A.128

    Gamblers Anonymous Member 3 ......................................... A.130

    Gamblers Anonymous Member 4 ......................................... A.133

    Phaidra Knight ................................................................... A.136

    Susan Hunsicker................................................................. A.138

    Brian Jones........................................................................ A.139

    Tammy Jones ..................................................................... A.141

    Rick Hunsicker................................................................... A.144

    Terry Hunsicker ................................................................. A.146

    Kirsty Viedra...................................................................... A.149

    Laura Field......................................................................... A.151

Lauralee Field ................................................................ A.154

Searle Field ................................................................ A.156

Chris Vlasto ................................................................ A.160

Deb Stenack ................................................................ A.162

Andrew Faulkner ................................................................ A.163

Adrienne Breslin ................................................................ A.165

Beth Bozman ................................................................ A.167

Ernie Stefanelli ................................................................ A.170

Alison Janes ................................................................ A.172

Jason Pawlowski ................................................................ A.175

Molly Watts ................................................................ A.177

February 21, 2026 Investor Texts ................................................................ A.179

"Investor-4" Communication ................................................................ A.183

Draft Hunsicker Book, *The In Between* ................................................................ A.186

Hunsicker Medical Records ................................................................ A.283

Hunsicker Medications List and Scope of Treatment ................................ A.752



June 15, 2026

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:  *United States v. Christine Hunsicker*, 25 Cr. 318 (JPO)

Dear Judge Oetken:

I write in support of Christine Hunsicker, who will appear before you for sentencing. I'm 83 years old.   My first serious work out of college was with IBM in the mid '70's selling mainframe computers to the Auto industry.  I've spent the last four decades in the technology and healthcare startup sectors here in New York, building and backing new ventures.  I've sat across the table with many founders and operators.  I mention this because it bears on the one thing I can offer to the Court: a judgment about character, formed over a long life of watching how people behave when things are going well and when they are not.

For the past sixteen years I've been an active member of Gamblers Anonymous, making 2 – 4 meetings/week.  My addictive risk patterns show up only around the stock market/cryptos – no other forms of gambling have any attraction to me.  When the pandemic struck, GA closed all our in-person meetings in April 2020.  Given my background, I helped move our local room meetings onto Zoom and have hosted — now three meetings a week – ever since.  The younger room members call me "Mr. Millennial" for an 83-year-old who runs the tech.  I tell you this as my vantage point from which I've observed Christine.  I am not offering a friend's testimonial.  Over the years I've watched and listened to hundreds and hundreds of people who've come through these rooms— some who did the work, many who did not — and have learned, hopefully, to tell the difference.

I recall Christine coming to our GA meeting the same week her conduct first appeared in all the NY press. She did not come quietly or attempt to manage how she looked. That week, with her name in all the papers, she walked into our room and without flinching described her arrest and charges. In sixteen years in Program, I have rarely heard anyone arrive at their lowest moment with that kind of directness and ownership. Since that day, I've been in multiple on-line meetings with her each week. Over the past year that is well over a hundred occasions on which I have personally watched and listened to her.

What I can offer you, from direct and repeated observation, is this. Christine is honest about what she did in a way that was initially both uncomfortable to witness and, frankly, inspiring to hear. In our rooms the only currency is telling the truth about yourself, and there is no reward for it beyond the work itself — no investor to win, no audience to perform for. I've watched her name her own conduct squarely, without softening it and without reaching for the explanations that a person in her position could so easily reach for. She does not blame others. She does not offer the Court, or us, a story in which she was a victim of circumstances. I've spent my last fifty years in self-development and recovery work, and I know the sound of a person managing their image. This is not her. This is someone who's doing the hard, uncomfortably plain work of accountability in front of other people, week after week.

As to who she is: she is direct, clear, forceful, and genuinely relatable — a rare combination. In nearly fifty years of this work, I recall two other women, both who I trained alongside in the late 1970s, who brought a similar quality of presence and clarity to a room. What moves me is how she's turned that same vision and insight that served her building her businesses inward, on herself, in service of recognizing and telling the hard truths rather than escaping them. She is working to make her journey and process useful to herself, her network and to her GA community.

Christine has had her "awakening" and speaks powerfully as to how effortlessly chasing outsized risk became normalized thinking. She has embraced the Twelve Steps not as a performance but as a working practice, and she speaks with clarity and focuses on wanting to understand those lessons so they can helpful to others in recovery. Having watched her for a year, I take her at her word, because she's walking the talk - her words and conduct have matched. For my part, I intend to

remain part of her support system. She will have a place in our room, and a fellow member committed to her continued recovery, for as long as she needs one.

I make no argument about the facts of the offense; that is not my place and not my knowledge. I offer only what I have seen with my own eyes over the past year: a person meeting the worst moment of her life with honesty, consistency, and a determination make her hard-earned lessons be useful to others. I believe she has real intention to contribute to others who suffer from this addiction, and I hope the Court will weigh that alongside everything else before it. Thank you for considering my letter.

Respectfully,



The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Dear Judge Oetken,

My name is ███████████ and I am writing in support of Christine Hunsicker. By background, ████████████████████████████████████████████ ██████████. I have come to know Christine through Gamblers Anonymous, over the course of 9 months.

We first started speaking casually after meetings and gradually developed regular conversations about recovery, life, shame, accountability, and rebuilding after destructive periods. Over time, those conversations became a meaningful source of support for me, particularly during one of the hardest and most destabilizing periods of my life. In Gamblers Anonymous, a sponsor is a person in recovery who guides and supports another member through the recovery process by offering accountability, honesty, and consistent personal support. Christine eventually became my sponsor within GA itself, and she has consistently supported me through recovery with an honesty, steadiness, and generosity that I will always be grateful for. Her sponsorship has been an important part of my own stability and growth during this period.

I met Christine after the case against her had already become public. I did not know her during the height of her career or success. I was not part of her business world, and I have no emotional investment in protecting some earlier image of her. The only Christine I have ever known is someone living under the reality of public collapse, criminal charges, financial ruin, and the possibility of incarceration. It is at this stage that she profoundly affected me.

I still remember my first GA meeting with her because I left genuinely shaken by how honest she was. She openly spoke about facing sentencing and possible prison time. Later, she told me that when she disclosed her misconduct to the Board, she had been abroad traveling. What stayed with me was that she did not attempt to disappear or remain overseas indefinitely. Instead, she informed the Board where she was, returned to the United States, and chose to face the consequences of her actions directly. That stayed with me in a very specific way. ████████ ██████████████████████. I know how strong the instinct can be to disappear when shame becomes unbearable: to detach, reinvent yourself somewhere else, run from humiliation. Instead, Christine chose accountability and transparency at a moment when it would have been easier not to.

Most people would not do that.

What stayed with me even more, though, was what happened afterward.

A.133

Since I began attending GA meetings in December, I have watched Christine continue to show up to nearly every GA meeting I attend with a consistency that honestly surprised me given what she herself was carrying. In recovery communities, people notice who keeps coming back. Christine kept showing up and she did not show up passively.

One of the clearest examples of this is the beginner-focused online GA room she started and now leads. Christine noticed that newcomers, especially women and queer folks, often struggled to find space to speak openly in larger meetings and frequently left feeling unseen or unsupported. Instead of just identifying the problem, she actively created a space meant to make those people feel safer entering recovery.

I have personally watched newcomers enter those meetings terrified to speak, sometimes barely able to introduce themselves, carrying enormous shame about gambling, debt, lying, relapse, or losing control of their lives. Christine has a very particular way of talking to people that makes them feel less humiliated and less alone without ever sounding fake or performative. In recovery spaces, that matters more than people realize. There were many moments where I remember thinking that she would have been fully justified emotionally in disappearing into her own problems and focusing only on surviving her own situation. Instead, she continued spending emotional energy helping other people stabilize.

Outside meetings, Christine and I speak regularly, usually on weekends. Some conversations are serious and about recovery, accountability, fear, rebuilding life after self destruction, or trying to live with consequences. Other times, we honestly just joke around, complain about life, talk about books, the dating scene, best diners in NJ, which art period is the best, identity, work, immigration, and absurd things from the week.

She ████████████████████, comes from a completely different world and yet she has consistently made time for those conversations. There is something wonderful about being able to call someone at the end of a difficult week, and have them pick up ready to talk seriously, joke around or simply make you feel less alone for the hour. Christine has been that person for me.

A lot of people are generous when they are successful, admired, or surrounded by people who can offer them something. What struck me about Christine was watching her continue investing emotionally in other people during a period where her own life was collapsing publicly. There were many moments where she could have understandably withdrawn into herself completely. Instead, she remained deeply present for people around her, including myself, who she only met through GA.

Some of our most meaningful conversations, though, have been about accountability. One thing that has stayed with me very strongly is how often Christine talks about reparations and responsibility: not in a PR sense, but in a deeply moral one. I remember one conversation in particular where she spoke at length about the reality that actions can permanently affect other people's lives, her own situation and about wanting whatever future she has to include actually contributing something meaningful and constructive rather than simply trying to "move past" what happened.

What struck me was that these conversations were never centered on self pity. If anything, they carried shame, grief, fear, and a very genuine desire to sit honestly with what she had done and make things better where she can. And importantly, many of these conversations happened privately and casually, during moments where she had absolutely nothing to gain from presenting herself positively. That is a large part of why I trust that the remorse I have seen in her is real.

█████████████████████████ there is something deeply meaningful to me about the role Christine has played in my life over these past months. Recovery can be profoundly isolating. So can immigration, ambition, failure, and trying to rebuild yourself while carrying shame. During a period where I often felt emotionally untethered, Christine became one of the few people who consistently made me feel less alone. That may sound small, but in recovery communities it is not small at all.

I understand the seriousness of the offense associated with this case, and I am not writing to minimize it. If anything, what has affected me most is that my opinion of Christine was formed with full knowledge of her situation and during the lowest period of her life, not the highest.

I met Christine after the headlines, after the public scrutiny, after the collapse of her career and public image. And despite that, I watched her continue returning week after week to rooms full of struggling people, many of whom had nothing to offer her socially or professionally. I watched her continue speaking honestly about accountability and reparations even in private conversations where there was no audience and nothing to gain. I watched her spend emotional energy helping newcomers stabilize while her own life was changing. That is the person I came to know.

I believe people often reveal the clearest version of themselves not during success, but during collapse. What has stayed with me about Christine is not simply that she made serious mistakes. It is that after losing nearly everything, she still chose honesty, accountability, reparations and service to others. I genuinely believe she remains capable of meaningful positive impact on the people and communities around her, and I believe the remorse and responsibility I have witnessed in her are real.

I look forward to continuing to know Christine, not as the worst moment of her life, but as the person I have come to know in recovery — someone capable of honesty, accountability, humor and meaningful care for other people. I intend to remain a part of her support system.

Thank you for your time and consideration.

Respectfully,



Dear Judge:

My name is Phaidra Knight and I am writing on behalf of my wife, Christine Hunsicker.

I understand the serious nature of the offenses before the Court. I write only to provide perspective on the person I have known, the changes I personally witnessed, and the person that I see today.

When I first met Christine, she was energetic, engaged, adventurous, and deeply driven. We traveled together, worked out frequently together, spent time exploring new places, and shared a close emotional and physical connection. While our relationship was never perfect, it was fairly healthy, connected, and full of life.

Approximately three months into our marriage, a large mirror fell from our bathroom wall and struck Christine's head. What followed was unlike anything I had ever experienced. As a lifelong professional athlete, I have been exposed to people who have encountered head injuries for many years. I have had never witnessed the degree of change that I observed in Christine.

The person I knew became withdrawn and isolated. She spent much of her time on the couch suffering headaches, fatigue, and a lack of any zest for life. Activities we once enjoyed disappeared. Travel stopped. Intimacy diminished. Communication became increasingly difficult. I often felt as though I was living with a completely different person than the one I married. Her memory was terrible. She repeated herself frequently. It was incredibly sad and frustrating.

At the time, I did not fully understand what she was experiencing. I struggled massively with the changes in our relationship. More often than not, I didn't think the relationship would survive. I also feared for her wellbeing. She was in constant pain, deeply depressed, and at times expressed hopelessness in ways that alarmed me greatly.

Looking back, I now recognize how profoundly she was struggling, even if neither of us fully understood what was happening at the time.

Fast forward to the matter that brings us here today: when Christine disclosed the truth about what had been occurring within her company, I felt shocked, disappointed, and betrayed. I had invested significant emotional energy into her and the company. I frequently asked about fundraising and business operations because I cared deeply about what she was building and how that pressure was affecting her.

A.136

Learning that she had concealed so much from me was deeply painful.   I questioned why she did not feel she could tell me the truth sooner.

Since disclosing the truth, Christine has been on an entirely different trajectory, one that has been quite impressive in many regards.  What has impressed me most is not simply that she accepted responsibility for what she actually did, but the seriousness with which she has tried to understand and address the underlying issues that contributed to her behavior.

Over the past year and a half, I have watched her actively engage in psychotherapy, openly acknowledge her gambling addiction and other destructive patterns, and commit herself daily to recovery through Gamblers Anonymous.  She dedicates significant time to supporting others facing similar struggles and speaks openly about the harm her actions caused.

Her focus now is entirely on accountability, personal growth, and making meaningful amends whenever possible.

In many ways, the woman I first met has begun to reemerge. She is more open, honest, present, and connected to others than she has been in many years.

I do not know what the future holds. The uncertainty surrounding these proceedings is difficult for both of us. What I do know is that I have watched Christine work every day to become a better person. I have watched her accept responsibility for her actions rather than run from them. I have watched her dedicate herself to recovery, accountability, and service to others.

Christine's conduct was serious and deserves to be treated seriously. At the same time, I hope the Court will consider not only the mistakes she made but also the significant effort she has made to understand those mistakes, address their causes, and ensure that they are never repeated.

Thank you for your time and consideration.


Sincerely,

Phaidra Knight

A.137

June 16, 2026

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York 40
Foley Square
New York, NY 10007

Re: *United States v. Christine Hunsicker*, 25 Cr. 318 (JPO)

Your Honor,

My name is Susan Hunsicker, and I am writing on behalf of my daughter Christine Hunsicker who is currently awaiting sentencing.

I am not writing to you to condone or excuse her actions, but to tell you about her early life and character. When she was a child, Christine was a phenomenal student athlete. As parents, sometimes I think we don't see the full picture of our children because we focus on their accomplishments and assume they are doing great. I learned after she left home that for years Christine was repeatedly sexually assaulted ███████████████████████. The assaults had a huge impact on Christine's life physically and emotionally, and she has spent decades grappling with the aftereffects.

Christine has always been hard-working and selfless. When she first experienced business success, she set up a sizable donor-advised fund managed by the New York Community Trust and made a large donation to the Friends of Princeton Field Hockey to improve their facilities. Rather than hoarding her assets, she willingly shared them with those around her. At Gwynnie Bee and then CaaStle, she re-invested everything she had back into the company and its employees to try and make it a success.

Christine has been unfailingly generous with her family as well. Years ago, she funded her niece Ashley's college education. Most of all, Christine has been my rock since my husband died twenty-two years ago. Yes, I also have two sons, but there is nothing like a daughter to oversee my life and help me when I need it. This is Christine's true character, and I respectfully ask that you consider it when you sentence my daughter.

Respectfully,
Susan Hunsicker

A.138

To The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, NY. 10007

My name is Brian Keith Jones. I am Christine Hunsicker's brother-in-law. I am a sixty-year-old African American man who grew up in and around Compton and Long Beach California. I would love to say I made the best choices, as a young man in that environment but to say that would not be the truth. I share this because the only reason I am not dead or in jail is due to the love of those people around me who fed into me a brighter future that did not exist in the environment I was choosing. I made the choice to leave that environment and seek out the future, those who loved me had told me about. That future has led me to work with troubled young people, who were coming out of the juvenile justice system and/ or foster care. Then led me to work in the mental health field as a case manager to help support and guide them to independence.

I met Christine over 5 years ago. We connected right away. I loved her wit, spirit and intelligence immediately. I admired her down-to-earth nature and her ability to hang with me in toe-to-toe debates on God and religion. Over the years Christine and I have had very in-depth conversations about life, business, family and our histories. So, I have come to know her well. She is one of the most giving people I know. She has a passion for animals and the environment. She has built businesses and is a great source of support for friends and family. We can depend on Christine for her insight and stability. She is my sister and I would do for her what I would do for my wife, in-laws and biological family.

A.139

I know for myself that acknowledging one's wrongs is the first step in growth. Accepting the consequences of our wrongs is the second. I was shocked when I first heard what was done, but then I remembered that we are all flawed in some way. I will never judge Christine for choices she has made. I will only love her more, like those who loved me through the times when I disappointment them. I am better because they did and Christine will as well with the love of those who know her well. Your Honor, I only ask if the law allows and you find it warranted to extend mercy to my sister. She is doing the work to be better and do better.

Our family has every intent on being there to support Christine through this process. We will be here to uplift her, encourage her and cheer her on to bigger and better things. I have come to know that if it had not been for the poor choices I made, I could never be as effective in connecting with the young people who are in similar struggles. It truly takes a village, and Christine is and will always be a part of our village.

Sincerely,

*Brian K. Jones*

Tammy Jones



To: Judge Oetken

The Honorable J. Paul Oetken

United States District Judge

Southern District of New York

40 Foley Square

New York, NY 10007

My name is Tammy Jones. I am the sister of Christine's wife/partner. I have known Christine for 10 years. I am currently the Assistant Director for Middle Georgia Community Action Agency Head Start. I can remember the first time meeting Christine. I am a true southern Georgia girl with an accent none like northerners. I am certain after the first conversation with her she Googled what she might have thought I was saying just for translation purposes. That is just Christine. I have made wise choices for the most part of my life but there was a dark time in my life where I made a horrible choice that could have landed me in big trouble. It was nothing but favor, grace and mercy that I escaped it. I used that experience and second chance to help others. That is exactly what I have witnessed Christine do with ease and eagerness. To witness her work through this experience by helping others and starting up initiatives to pour into others has been rewarding and self-gratifying for her in so many ways. However, the greatest gift is what she shares and provides to those around her.

I remember when my mom was diagnosed with Alzheimer's and Christine took time to travel to Georgia, staying with my parents and spending days working with mama. She created calendars that clearly showed the date so mama would be aware of the time. She painted with mama, did activities to stimulate her brain and just took time to be with her. She provided her with a whiteboard with the daily schedule in several locations throughout the house, labeling rooms with pictures and words and placing family photos around the house. I think for me, that fact that she traveled, driving 15 hours to spend almost 2 weeks with my mom was very noble and I was forever in her debt. Christine has shared her work experiences with me and her determination moved her into a place of comfort.

She has shared with me how building skills creates so many opportunities while developing discipline and increasing confidence. She is working on the right goals, learning from many mistakes, using strategies that are effective, while having support from others to hold her accountable and having us to lean on when needed.

I have witnessed consistent kindness, compassion, and a genuine concern and love for others. Her love and generosity has spread not only to her family but also to strangers who just needed help along the way. She is a devoted family member who cares deeply for others, has always been willing, and has shown love. I understand that Christine is currently facing criminal charges. The allegations do not reflect the person I have come to know over the years. The conduct described in the charges is inconsistent with her character and in no way defines who she truly is as a person and valuable member of her community. Although I am not in a position to comment on the facts of the case, I can speak to my experience with Christine and attest that she has always conducted herself in a manner that earned my trust and respect.

Christine has demonstrated her positive qualities moving beyond this current circumstance on her way to her own rehabilitation by attending numerous Gamblers Anonymous sessions, including working the hotline on weekends, leading some meetings and starting a beginners room for the newcomers. She looks forward to these sessions and livens up just talking about her devotion to this service that she has dedicated her time to not just for her own rehabilitation but to also help others while traveling this road with her own journey. She also wrote a Character Development Guide for young children that is going to be rolled out at a camp she is a part of this summer. Reaching back to the youth and pouring into them early as a preventative measure for years to come. She is concerned about helping build positive behaviors and habits that will carry into adulthood. Teaching healthy coping skills, responsibility, and critical thinking early can have long-term benefits. As a public school teacher of 23 years, I definitely understand the great impact this has on our youth for years to come. While I understand the seriousness of the matter before the court, I believe that this situation does not fully define who she is as a person. I respectfully ask your honor to take into consideration her character, her commitment to improving herself and those around her, and the support available in this matter. Christine has a strong support system and is committed to ensure she continues to do the hard work, to never make the choices she has made ever again. Her continued counseling, working of her programs and continual giving back to the community, will ensure she is productive and responsible member of any community she serves.

Thank you your honor for taking time to consider my perspective. I respectfully ask that you take her character and positive impact she has had on her family and others into account when making your decision.

Respectfully yours,

Tammy Jones, Ed.S.

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:     *United States v. Christine Hunsicker, 25 Cr. 318 (JPO)*

Your Honor:

My name is Richard Hunsicker, and I am Christine Hunsicker's older brother. I appreciate the opportunity to write to the Court on my sister's behalf. I hope my perspective will help provide a fuller picture of the person I have known as a sister, daughter, entrepreneur, and friend.

From an early age, Christine stood out for her intelligence, determination, and willingness to work hard. Whatever she chose to pursue, she approached it with focus and dedication. Even as a young person, she had an entrepreneurial spirit and was always thinking creatively about solving problems and building something meaningful.

Although Christine possessed remarkable drive and talent, her childhood was far from easy. Our father placed extraordinary pressure on her to excel as an athlete, creating an environment where success was expected and failure was rarely tolerated. She also endured traumatic experiences that no child should have to face, including sexual abuse ██████████████████████████████████████████████████████████████ As a teenager, she faced the additional emotional burden of an unplanned pregnancy. She underwent an abortion in secret and I was the one she confided in first. I can remember her crying in the bathroom sitting on the toilet describing the horrific procedure she had just endured. Despite the physical and emotional toll, she was expected to return and compete the very next day in a field hockey game. Rather than being given time to heal, she learned at an early age to suppress pain, meet expectations, and keep moving forward regardless of what she was experiencing internally.

Looking back, I believe these experiences shaped Christine in profound ways. They instilled in her an extraordinary resilience and determination, but they also taught her to carry immense burdens without asking for help. Throughout her life, I have watched her respond to adversity by working harder, pushing herself further, and focusing relentlessly on achieving her goals. While these experiences do not excuse the mistakes she has acknowledged, they are an important part of understanding the person she became and the strength she demonstrated in overcoming so many challenges.

Despite these early challenges, in adulthood I have watched Christine build successful businesses through hard work, perseverance, and commitment. Her success did not happen by chance. When she was building her first  company, Right Media, she spent months staying up all night, sleeping in the office, all to turn her  vision into reality. Right Media, Gwynnie Bee, CaaStle – all based on an unwavering drive to create innovative companies that served customers and created opportunities for employees.

While I have always admired Christine's professional accomplishments, what has meant the most to me is the way she has treated the people in her life. She has always been generous with her time, advice, and support. When family members or friends needed help, she was often one of the first people to step forward.

One example is something deeply personal that changed my life. Several years ago, I struggled with a gambling addiction that had become destructive. Christine recognized that I needed help, and she did much more than simply offer sympathy. She encouraged me to seek treatment, held me accountable, and supported me throughout my recovery. Her support gave me the strength to rebuild my life, and I have remained grateful for her compassion and guidance ever since. That experience showed me the depth of her character and her genuine concern for the people she loves. Christine has been a devoted daughter to our mother, a caring sister, and someone who values family relationships. Through both good times and difficult ones, she has remained deeply connected to those she loves.

One reason I remain hopeful about Christine's future is that she continues to look for ways to contribute positively to the lives of others. She recently become actively involved in operating a tennis club and developing innovative summer programs for teenagers. These programs are about much more than sports. They provide young people with opportunities to build confidence, develop discipline, learn teamwork, and form positive relationships with mentors and peers.

I understand that Christine has admitted to serious wrongdoing. Nothing I have written is intended to excuse or minimize her conduct. I know she accepts responsibility for her actions, and while this has been heartbreaking for our family, it has not changed my belief in the fundamental character of the sister I have known for forty-nine years. My purpose in writing is simply to share with the Court the person I have known throughout her life—a devoted daughter and sister, a caring friend, a hardworking entrepreneur, and someone who has consistently shown compassion and generosity toward others. I respectfully ask the Court to consider the entirety of her life and character.

Regardless of the sentence imposed, Christine will not face the future alone. I will remain steadfast in my commitment to supporting her. I will be there to help her rebuild her life, remain accountable for her actions, and continue making positive contributions to others, just as she was there for me when I needed her most.

Respectfully,

Richard W Hunsicker

Richard Hunsicker

June 4, 2026

To:        The Honorable J. Paul

           Oetken United States

           District Judge Southern

           District of New York 40

           Foley Square

           New York, NY 10007


From: Subject: Terry B Hunsicker


Support letter for Christine Hunsicker


Your Honor,

My name is Terry Bacon Hunsicker and I am one of the older brothers of Christine. I live with my wife of 26+ years, Laurie, who has been a high school teacher for the entirety of our relationship together, in many states across the US, both in the classroom and remote. She is Christine's sister-in-law and we have 2 children, Terry Richard and Ashley Ann who are Christine's only nephew and niece and whom she has had an immense personal impact in a positive manner. While Christine is not the parent for our children, as their aunt she has also tried to provide that same level of support for her niece and nephew. Whether it be personal life outlook or professional guidance for growth on how to be successful in the business world, she has always been active in my children's lives, even when we have been living in areas around the US where distance can be a barrier.

My sister is a driven professional and executive who has been very focused on her goals. This approach I believe comes from some of her experiences in the household we grew up it. Our father was a very successful athlete in multiple sports. He missed his opportunity to see if he could pursue that career in college as he and our mother gave birth to my brother and I while still in high school and right after. With that, my father had to go right into working an hourly job in manufacturing to support his now wife and their 2 children. I believe our father while doing the honorable thing to support his growing family (which in a few years would include Christine) always wondered what could have been. He was very active in both my brother's and my entry into little

league and high school sports. While both my brother and I were successful in multiple sports at the high school level, neither of us excelled enough to proceed to the next level at college. Christine was different. She was blessed with a natural ability in athletics, and our father pushed her very hard to win. She was one of the best athletes to come through Northampton High School up to that time and our father was very active in her development. In reflection, I believe through her he was seeking to capture the opportunity he may have lost in his own sports childhood and she certainly was subjected to much more pressure than my brother or I was.

During this period of time before graduating high school and continuing her athletic career at college, my sister also unfortunately had a terrible experience ▇▇▇▇▇▇ ▇▇▇▇▇▇▇ Sexual abuse is something that is difficult to discuss and I cannot even remotely attempt to understand what type of impact that may have on a person, or how they deal with it. I think Christine hid a lot of that, internalized it whether it be from shame or whatever way she interpreted it. I cannot speak to what that does to a person in how they get through the day to day or process that in terms of self worth but just horrible that she had to go through that. I do think she tried to do something positive from those terrible experiences if at all possible when she had the opportunity to start a company of her own and that being Gwynee Bee.

Christine has always wanted to provide opportunity and solutions for those that she maybe has felt were ignored or left behind or not self-confident. She formed Gwynee Bee in the first place with a target market of oversize women who didn't feel comfortable to go into stores and shop for themselves in public. My wife was a Gwynee Bee customer herself from the start of the company to its closure of operations. I personally have been able to see the positive impact to her that I firmly believe my sister intended her company to be able to provide to thousands of others out there. She has fought for the less fortunate and I believe this foundation for her approach to help others will always be there, no matter what challenges she may face in the upcoming years with this speed bump in her life.

There is nothing that can wind back the clock and allow Christine to pick a different pathway, despite how badly she wishes she could do that. Yet, I still believe firmly in this case that given an opportunity at some point in the future, my sister will come back stronger. She will still have that core drive, still have that want to help the less fortunate, but will be tempered by this experience that she is going through and will have learned from her mistake.

This is just a sad situation, certainly no more impactful than to those that were directly affected negatively, emotionally, and financially by Christine's actions. I know she will

spend the remainder of her days on this planet trying to find a way to make it up to all of those people, no matter what it takes. She also will be in a position to share her story, her choices, her mistakes with others in the hopes that they find a better path. I am positive she will look for women's groups where she can provide guidance and possibly temperance to other young ladies trying to build a career in a challenging business world that maybe unfairly handicaps their opportunities.

I plan to personally support her along with my wife's support as well during this upcoming critical months and the years beyond. That is not nor ever will be a question. She is my sister. She always will be. She is the aunt of my children. Always will be. My kids will learn from her and her experiences both good and bad. She will know she is loved and supported unconditionally as she always has been, faults and all. We will host holidays at our house, and my sister will be there with our other family members. Christine will also host those get togethers wherever her home is and we will be there with my wife and children (and their significant others) and Christine will know that she will always have that family support system around her. She has been there for myself with advice over the decades, sometimes when I didn't want to hear it. I expect to provide that same support and counsel back for her as she makes her way through this challenging journey back to a positive place in society where she can in turn help others.

Sincerely,

Terry B Hunsicker

A.148

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Your Honor,

My name is Kirsty Hale Viera, PsyD, and I have worked as a licensed clinical psychologist with adolescents and adults for almost 20 years. I am writing this letter on behalf of my friend of 30yrs, Christine Hunsicker. We met freshman year at Princeton University and played Varsity Field Hockey together for four years. We both attended as work-study students and for our first two years we cleaned the dining hall together after practice. We also lived together our junior year. She was one of my closest friends in university. After graduation, despite living on opposite coasts, we have maintained our friendship and visit each other when we can.

Christine was a smart and gritty player and worked her way into the starting line up as a sophomore. She was a hardworking and dedicated teammate even though she struggled with her mental health on and off through university.  Sophomore year I expressed concern about how she was doing, and she agreed to come with me to the University Health Center to pursue therapy. She demonstrated willingness to get support during a time when attending therapy was far less common than it is now.  For many years she has pursued therapy to work through childhood experiences and to learn how to be the best version of herself.  I know this hasn't been an easy process, but she has not given up.

Christine tends to be a fiercely independent person and has been supporting members of her family for many years. She rarely asks for help and yet has offered her support many times to family and friends. Several years ago, my sister and I flew into NY to attend my cousin's funeral, and Christine picked us up at the airport, hosted us for the night, and then drove us to the train station for the next leg of our journey.  She has demonstrated her generosity and support for me many times through the years.

I understand that Christine engaged in a serious act of deception in her professional world, and I won't minimize the impact of that decision. My personal experience with her has been different from this. She has been someone in my life who asks hard questions and speaks her mind when she believes it's in someone's best interest.  Before I got married, Christine asked me about my decision.  She managed to do this in a way that I felt supported and cared for, and I appreciated her willingness to risk a difficult interaction because she believed it was important. That was over twenty years ago, and I still think about the courage it took to initiate that discussion. I value her ability to be a true friend who can bring up difficult subjects and not avoid them for her own comfort.

One of our mutual friends reached out when Christine's legal situation came to light. I traveled to the East Cost to support her through the initial phase of the investigation because her wife was out of the country. We had many conversations while I was there, and

A.149

Christine took responsibility for her decision and described her subsequent attempts to repair the situation over the last few years. She didn't minimize or blame anyone for her choices and described feeling deeply relieved that the news was out in the open. Over the last year we have spoken many times about how she's been navigating the investigation logistically and emotionally. I believe that working through this process has led to a deeper sense of herself and a clarity of values and how she can live in alignment with them.

Christine has been on boards and advisory committees over the years to guide others in their pursuits. After graduation, she gave back to the field hockey community and has given generously to Princeton so that future students are able to study with fewer financial pressures. She has likely made other contributions, but she doesn't broadcast her good works, so I'm not aware of them. She has many skillsets-leadership, creativity, both big picture and detail-oriented understanding of projects, and a desire to support the people around her. I truly hope that she can return to contributing to the world more fully soon.

I am planning to fly back to New York a few days before her sentencing to support her through the process. I will continue to be available to offer emotional support following the decision. Christine is one of my oldest friends and I believe she made a significant mistake for which she has taken responsibility. I believe she's ready to receive her consequences and move forward with her life, and I will be part of her support team as she does this.

Sincerely,

Kirsty Hale Viera, PsyD

Laura Field

June 23, 2026

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Dear Judge Oetken,

My name is Laura Field, I have known Christine Hunsicker for thirty years; meeting her for the first time during my freshman year at Princeton University as a member of the Princeton Field Hockey Team.    I have known Christine as my friend, an honorary member of my family and the first teammate I remember meeting in college.   We have laughed as summer roommates sitting on inflatable furniture and subsisting on ramen and home-made sushi, been delirious setting up her backyard wedding in Hawaiian shirts and cried together as we printed photos of her father for his memorial service at far too young an age.   I know Christine has pled guilty in this case but I'm writing to offer context about who she is beyond this plea based on three decades of friendship and a unique perspective on someone who I consider to be the most dynamic person I know.

Princeton Field Hockey in 1996 was comprised of a variety of personalities from all over the world.   I joined the team as a backup goalkeeper--my primary sport and path to college was as a recruit for the lacrosse team—and on a team that was loaded with talent and National Championship aspirations, my impact as an athlete and what I could offer in terms of social or athletic collateral on this team was minimal.   In an athletic environment that often clusters around the player that raises everyone else's "cool factor" I was decidedly not that person.   Christine, however, was a powerful sophomore on our team-well established and talented on a very talented team.   She was the person you wanted to be athletically and to have as a friend socially.   Why she decided to include me in her circle I will never know, but she did from the start and I am forever grateful.   To me, that is Christine.   She saw commonality in our core values and never judged me for only what I could *do* for her or for the team—she included me because we shared similar beliefs that everyone should be valued for who they are at their essence.

I would consider Christine one of my best friends in life.   We were inseparable in college despite the fact that we could appear to be complete opposites to anyone who might casually look.   Christine was, and is, the extrovert to my introvert; the bold, blunt and direct communicator who spoke up while I was more likely to concede, to hedge and to accept "less than".   I often joke that she just decided we would be friends because I was too timid and that was that, but, in reality, we matched our opposites perfectly.   I was raised in a small New England shoreline town, attended boarding school and made my way to Princeton by way of sports, legacy and the privilege of my educational opportunity.   She was like no one I had ever met.   Field hockey was her path to Princeton and her path to open doors for her future.   While I had internships and jobs every summer that were set up by family and likely cost me more money than I made, Christine worked all through college to actually *get* through college.   I was the one who had the car on campus, but she was the one who I forced to borrow the car to commute to her daily jobs even though she would never ask for that favor.   She wasn't motivated by status or by bragging rights but by an intrinsic need to make something of herself—to make her friends and her family proud; to make her impact on her world and those around her.

We regularly had breakfast together my first year in college, and in those bleary-eyed mornings we had every life conversation you could imagine. We talked her through switching majors from pre-med to English—my major—we talked about family and friends and the stress of expectations and the desire to win. Our rambling conversations covered every topic and even then it was clear that she craved intellectual stimulation and had a curious mind. She was, and continues to always be thinking, churning ideas and her next step--impulsive and restless to produce. That impulsivity and restlessness is part of her personality, but at the core of her character is a person who cares deeply about others.

As I mentioned, I would consider Christine as a member of my family and, as someone who didn't go to high school in my hometown, she is one of the few people who has known my parents and brother for the entirety of my adult life. The summer following my freshman year of college I travelled the East coast working field hockey camps with several upperclassmen including Christine. We had planned our track to stop by my parent's house in Connecticut for a refuel and rest before pushing through the end of the summer. As we pulled into the driveway my mom came out to let me know that one of my high school teammates had been killed in a roll-over accident while a group of our friends had been driving home cross country. This was the first death of a friend for me and I was devastated, confused and left with three college friends who were now staying with my family while I left to attend to a funeral and be with my high school friends. It's important to note that we were not the "everyone walk right in home" growing up and it was not typical for my friends to take over my childhood home and made my mom exceedingly anxious. Christine didn't blink. She charmed my mom, made friends with my dad and made me feel like I could leave to be with my people while she handled any stress the friend invasion caused for my parents. She stayed up all night with me when I returned from the funeral and took all the stress she could from my shoulders. That's the Christine I know; the inclusive and kind protector.

In getting to know my family she came to see a dynamic that existed between me, my excessive weight and fitting in to a family where I was a physical outlier. I often thought that she started Gwynnie Bee to help people exactly like me. To help us fit in and feel seen in a way that, at the time, quite literally didn't exist. I grew up worried about what I looked like as a heavier kid and became an adult worried about what to wear because clothes for larger women were sold at three or four stores total and often catered to older, matronly styles. Feeling left out is one thing, but having to look like you didn't belong and be judged, either in reality, or in my mind, by family and friends was something else. Christine and I would often talk about clothes her family made for her to get through her childhood and she would help me talk through my clothing choices to avoid feeling like I didn't fit in at an event or that I was being judged for my weight. When she launched Gwynnie Bee it felt like a personal lifeboat and I was so proud of what she had started.

I too then wrestle with the why and how Christine came to this point in her life after seemingly pushing so hard to represent the "other" in the world and as a person who had worked so hard to change her own circumstances. I can see the competitive, hyper-focused person and the narrative of a greedy person that is being vilified publicly, but I *know* the person behind that trope. The easiest version of this story is to reduce Christine to the worst decision of her life and the compounding decisions made to right that wrong. The harder—and more accurate—version is to recognize that human beings are more complicated than a single chapter, even when that chapter carries serious consequences.

In my professional life I coach college lacrosse and have seen first-hand how upbringing, family dynamics and traumatic events can have a direct and long-lasting impact on behavior—especially in high achieving individuals. While my data points are derived from college-aged women, I have been coaching at the college level for 25 years and firmly believe there is a specific correlation between high achieving athletes and the need to show yourself worthy—more so as a woman in a business world dominated by men. A need to prove one's worth, to never "fail," and an independence that fosters a

A.152

chronic reluctance to seek help from others often to a massive personal detriment.  As a naturally competitive person with a desire to work her way to a better life and a deep distrust of the social norms and status quo of the business world, Christine was always someone who believed that effort, ingenuity, and sheer force of will could solve almost any problem. It is one of the qualities that made her successful, inspired so many people around her, and opened doors for others who did not see themselves represented in traditional spaces. It is also, I suspect, one of the qualities that contributed to the decisions that brought her before this Court.

That observation is not intended as an excuse. Christine has accepted responsibility for her actions and has pled guilty. Rather, it is an attempt to explain that the person I know is not motivated by malice, greed, or a desire to harm others. She is a person who spent much of her life believing that failure was not an option and that she alone was responsible for carrying the weight of every challenge placed in front of her. When those instincts are healthy, they create leaders and innovators. When they become distorted, they can lead people to make profoundly poor decisions.

The Christine I have known for thirty years is someone who shows up for people. She has shown up for me in moments of grief, uncertainty, and self-doubt. She has shown up for my family, who consider her one of our own. She has invested her time, energy, and resources into helping others succeed and feel seen. Those actions were never performed for recognition or publicity; they were simply part of who she is.

What has struck me throughout our friendship is that Christine has never viewed people through the lens of status. She did not care whether someone was popular, powerful, wealthy, or connected. She gravitated toward people who were interesting, authentic, and genuine. She has always had the rare ability to make others feel valued and included. In a world where many relationships are transactional, hers were not.

I do not write this letter to ask the Court to ignore the seriousness of the offense. I write because sentencing necessarily requires consideration of the whole person. The Christine described in headlines and court filings is not the complete Christine. The woman I know is complex, imperfect, extraordinarily driven, and deeply human. She is also capable of reflection, growth, and meaningful contribution moving forward and is surrounded by a support system that will help her towards that goal.

After thirty years of friendship, I can say without hesitation that this case does not define the totality of her character. It represents a serious chapter in her life, but it is not the entirety of her story. I believe she has the capacity to learn from these mistakes, to continue making positive contributions to society, and to rebuild trust through her actions.

Thank you for considering my perspective and for allowing me the opportunity to share what I know of Christine's character and the impact she has had on the lives of those fortunate enough to know her.

Respectfully,

Laura Field

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

June 1, 2026

Dear Judge Oetken,

I first met Christine Hunsicker in the fall of 1996 at Princeton University. Christine was a starter on the field hockey team, and our daughter Laura Field was an incoming freshman goalie. Although Laura left field hockey to concentrate on lacrosse after freshman year, Christine and Laura remained good friends. They were members of the same eating club, and each in her senior year was a club officer at Cap and Gown. Christine and Laura roomed together in New York City for a summer, and Christine spent another summer with our family in Mystic, CT. Christine was part of a Field family tradition, which included Laura's older brother and his family, of a Broadway show and dinner a week or so before Christmas. After a bad concussion, Christine began declining our annual invitations, explaining that she had a hard time tolerating any noise or lights. Although we would see each other occasionally at a Princeton reunion or Laura's 40th birthday party, we lost the catching-up opportunity of those annual Christmas outings.

Word of Christine's legal trouble reached Laura from Christine's teammates. Laura contacted me, and I asked Laura to see if Christine wanted to come to Mystic while events unfolded in a very public and painful fall from grace. When I called Christine to confirm that we would be happy to have her stay with us, her first comment was, "I am so ashamed." I asked Christine to make sure ▬▬▬▬▬ knew where she would be, and Christine's response, sadly to me, was that ▬▬▬▬▬ wouldn't wonder where she was. Apparently, sending ▬▬▬▬▬ a "Good luck" email was the extent of her initial emotional support. I hope ▬▬▬▬▬ has come around since then. While Christine stayed with us, another former teammate asked if she could come to Mystic to be with Christine too, and she did.

Christine told me that her parents married as teenagers. I remember her father, who died unexpectedly a few years after graduation, yelling loudly at field hockey games, and not necessarily in an encouraging way. He also coached Christine when she was younger, and Christine indicated to me that the dynamic was difficult.

The Christine Hunsicker I know is frank and self-aware, funny and good company. She is polite (as evidenced by scores of thank-you notes written to my husband and me over the years), kind (I recently came across several notes of encouragement to Laura after some tough games), and generous, contributing substantially to Princeton athletics and bidding on a fancy guitar at a charity auction to give to Laura's brother, an aspiring musician. Nobody I know "connects the dots" faster than Christine, a feisty competitor with an impressive intellect. After completing three or four puzzles that our family mostly gave up on, Christine announced while she was with us that she would like to try competitive puzzling -- and she did. She was also in a competitive

A.154

bowling league with men who did not seem to come close to sharing her political viewpoint.

I am not sure what caused Christine to misrepresent financial statements, but I feel certain it was not for personal financial gain. She does not live lavishly and seems to spend more on her much loved dogs and a few impressive house plants than traditional trappings of wealth. I think her motivation has more to do with being passionately entrepreneurial -- always thinking of how to improve something, to create something, to make her mark.

To earn money for legal fees these last months, Christine worked to improve operations at a tennis club. In connection with that role, she used her experiences in athletics to draft a badge-based incentive program to help teach children at the club lessons in sportsmanship. She also wrote a companion children's book, both of which she asked me to take a look at, and I happily obliged. She is a good writer and responded thoughtfully to suggested edits.

I regret that we were not there for Christine when she could have used good advice or objective counsel, but I am grateful for reconnecting to someone who is a bright light in our lives. We do not intend to let that lapse happen again. Before she left Mystic, Christine told me that she intends to pay back everyone who was misled. I have no idea if that is possible, but I have no doubt that she will try.

Sincerely yours,

Lauralee J. Field

Lauralee J. Field

A.155

A. Searle Field

███████████

June 25, 2026

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re: United States v. Christine Hunsicker, 25 Cr.318 (JPO)

Dear Judge Oetken,

I have known Christine Hunsicker quite well, and consistently, for the past 30 years. It all began when our daughter Laura arrived at Princeton 1996 as a freshman goalie on the field hockey team,and Christine was a sophomore playing defense.

They soon became best friends. We watched them each weekend and got to know Christine's dad and mom as well. As you may have learned, they had an extraordinary season, when, as the number 17th ranked team, they went on to play in the Division I national championship finals, in no small part due to outstanding play and leadership by Christine.

Due to the untimely death of Christine's father, I ended up as something of Christine's surrogate dad for the past 25 years, an experience which I hope I can shed some useful light on Christine as a person.

As for my background, I was in the class of 1967 at Princeton, served in the military, and graduated at the top of my class from Georgetown Law Center in 1972. Upon graduation, I was appointed an Assistant U.S. Attorney for Connecticut, but shortly, Senator Lowell Weicker who had appointed me asked me to serve as his counsel on the Senate Watergate Committee. Among many interesting tasks over those years, I took the lead on the investigation, trial, and conviction of President Nixon for falsifying his taxes.

After Watergate, I was appointed as the Chief Counsel and Staff Director of the first Intelligence Committee in Congress, which consisted primarily of investigations of past misdeeds by multiple intelligence agencies and prominent public officials. As that assignment wound down, I briefly managed the Situation Room at the White House under President Ford.

Later, when Lowell Weicker became Governor, I served as his Chief of Staff and President of The Connecticut Development Authority. After his term ended, I went on to be Chief of Staff to the Mashantucket Pequot Tribe, managing the startup of the Foxwoods Cassino as it grew to become the largest and most profitable cassino in the world, during which we employed Christine one summer while she was at Princeton.

A.156



Needless to say, during the Watergate period I spent countless hours with some very talented, successful, and prominent people who were accused of significant crimes. As a result, I had enormous empathy for the judges who had to balance the promising futures of those people with the crimes they had, for many complex reasons, undertaken. Later many of them, such as Chuck Colson, John Erlichman, Bob Haldeman and especially John Dean became friends, and we spent endless hours debating their punishments, both physical and mental, and the inevitable rehabilitation challenge they faced. Tough conversations without a lot of good answers. Nevertheless, I see and feel those issues bearing on me now as I observe Christine, and it informs some of what I have to say later in this letter.

Importantly, following are some of what I hope are relevant experiences I have had with Christine, starting with the Princeton years. She was her dad Terry's pride and joy, and he never missed an opportunity to let us al know he was her coach, then and always. On the playing field she was a natural-born leader, and other players enthusiastically followed. Her skills were not her strong point. Instead, it was her hard work, grit, and fierce determination. At the same time, she always maintained a friendly demeanor and robust sense of humor. She was the kind of child we all would have been proud to have.

Perhaps the time that most exemplified Christine on the field hockey pitch came in the closing minutes of the national semi-finals against the number one team in the nation. The game was tied. The Princeton goalie was out of position. An opposing attacker was racing for an easy goal, when Christine came from well behind, caught up and threw herself in front of the shot. Goal saved. Princeton scored and pulled off the college upset of the year. Classic Christine. She wouldn't let down her team, even if she had to run faster than she ever had before and then take a hit.

As you've probably already observed, Christine is very smart and well informed. But I can attest that she is even more of a good, kind, considerate, and unselfish person. She was always looking for presents for her friends, insisting that they go first when in line, noticing when they could use a pat on the back or encouraging word. I spent a lot of time around Christine during those college years and she was the quintessential "good kid." Perhaps a bit too anxious to try to please everyone else. She came from real hardscrabble and was quick to express, in a particular conversation I remember from that time, her gratitude for her good fortune in life

One summer during college, I arranged for Christine to work for the Mashantucket Tribe at Foxwoods. We were on our way to becoming to largest cassino in just a few short years. Human resources was the hotbed, since we were hiring some 12,000 new employees that summer. Christine went to work in human resources, and they gave her a task that would take the whole summer. But in two weeks, it was dome! That pattern went on all summer—hard task after hard task completed with a big smile—and her bosses later told me she was the best employee they ever had.

Even more impressive was another project I worked with her on. She worked one summer in Harlem in New York City, teaching and mentoring young black youth. Since the Mashantucket



Tribe was predominantly black, having relocated from various inner cities, Christine asked if she could arrange for her kids to spend time on the Reservation in Connecticut, to get some exposure to a different world and benefit from promising friendships. The Tribe was extremely interested. So Christine went into action, commandeering busses, living quarters, mentors, lectures and demonstrations, and of course the Tribal funding that would be needed…for that summer as well as for summers to come. Not many young people can lay claim to an ongoing legacy to bridge the divide between poverty and opportunity, and actually make it happen overnight. It demonstrated a big heart to go along with all that brains, skill, and determination. It was also during that period that I saw her early and determined advocacy for civil rights and LGBTQ rights and causes.

After Princeton, Christine wanted to teach and particularly wanted to teach in Europe. It made sense to me, since I had seen the side off Christine that loved not only teaching but passing on a path to opportunity. I thought she had the qualities that would make her a great teacher, so I put her in touch with the Connecticut Association of Independent Schools. They found her a position in Europe, for which CAIS thanked me profusely for the referral. The assignment didn't work out and soon Christine was using borrowed airline travel rewards to fly back to New York and Right Media.

I had less contact with Christine during the Right Media days, but did spend many times with her discussing her next project after that. As she began focusing on what would become Gwynnie Bee. I was impressed by some of the people she was attracting to that venture. In fact, I recommended Gwynnie Bee to a Chinese colleague of mine. He and I, and our wives, had dinner at J. P. Singh's house in New York City. We were so impressed by J.P. that my friend invested $2 million in Gwynnie Bee. It was clearly J.P. who attracted my friend's commitment, and in the events of the past year my friend keeps asking where J.P. and people like John Hennessy were during the demise of Gwynnie Bee—where was the oversight and mentoring of her—and, interestingly, he holds only sympathy and concern for Christine's circumstances.

So much for history. My closing thoughts are, first, I sincerely hope that this set of events doesn't destroy what I believe to be a fundamentally good person, who has made serious mistakes, but who nevertheless retains the capacity to make valuable contributions in the future to the society around her. I realize that this represents a most difficult balancing, and I just pray that a path can be threaded that finds light at the end of the tunnel. We must all try to avoid destruction when there is so much good that can be contributed over rehabilitation and a second chance.

Christine Hunsicker is a good person, who in conversations since her errors were uncovered, has been remarkably straightforward and candid about taking full responsibility and not blaming anyone else. She has been profoundly embarrassed and humiliated, even expressing her fear to me that I, of all people, would reject her. Her remorse is deep and honest.

To that end, if there is any role that I can play in overseeing any form of rehabilitation, any mentoring, or any monitoring role, then I am prepared and willing to step forth. I realize I am

A. Searle Field

███████████████

only a substitute dad, but I will make whatever effort is needed to see that there is a future that allows Christine to make a positive contribution to our larger community and make whatever recompense she can for her errors.  Please do let me help in any way that I can.  My prayers are with your challenging task at hand.

Sincerely,

A. Searle Field

███████████████

A.159

Chris Vlasto



July 12, 2026

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Dear Judge Oetken:

I am writing on behalf of Christine Hunsicker.

For more than thirty years, I worked as a journalist at ABC News, first as an investigative reporter, then covering the White House, and ultimately as Executive Producer of Good Morning America. Over those years, I interviewed presidents, CEOs, public officials, victims, and people whose own decisions had changed the course of their lives. My career depended on judging credibility and character. It taught me that there is a profound difference between someone who regrets getting caught and someone who truly accepts responsibility.

That distinction is why I wanted to write to you.

I met Christine shortly after her arrest. I expected to meet someone consumed with defending herself or explaining away what had happened. Instead, I met someone who accepted responsibility almost immediately. From our first conversation, she was not asking how to avoid the consequences of her actions. She wanted to know how she could make amends, repair the harm she had caused, and become a better person.

That has remained true every time I have spoken with her since.

Christine has never struck me as someone looking for sympathy. She has never minimized what happened or blamed someone else. Instead, I have watched her confront the reality of her actions with honesty and humility. She understands that trust is not restored by words; it is earned over time through conduct.

Journalists are, by nature, skeptical. Mine is a profession built on questioning motives and separating genuine remorse from carefully crafted narratives. Over three decades, I met many people who wanted me to believe they had changed. Some had. Many had not.

**I believe Christine has.**

A.160

That belief is not based on a single conversation but on watching how she has approached this difficult chapter of her life. Her remorse has never seemed performative. It has been consistent, thoughtful, and focused on the people she hurt rather than on herself.

I also believe that this experience has fundamentally changed her. The intelligence, drive, and creativity that made her successful before these events remain, but they are now accompanied by humility and perspective that could only come from enduring something like this.

Throughout my career, I met hundreds of people who made serious mistakes. Some never accepted responsibility. Others spent years convincing themselves they had done nothing wrong. A much smaller group confronted their failures honestly, accepted the consequences, and resolved to live differently. In my judgment, Christine belongs in that latter group.

I do not believe this is the end of Christine's story. I believe she will make this experience count. I believe she will use what she has learned to do something meaningful in the next chapter of her life and that others will ultimately benefit from the lessons she has learned.

I know the Court's responsibility is to impose a sentence that reflects both accountability and justice. Christine understands that accountability is unavoidable. My hope is simply that the Court will also consider the person she has become since her arrest and the person I believe she is capable of being in the years ahead.

Thank you for your time and consideration.

Respectfully,

Chris Vlasto
Former Executive Producer, Good Morning America
Founder, Haven Strategies

June 15, 2026



The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Your Honor,

My name is Deb Stenack. I am a 71 year old retired electrician. I went to school with Christine Hunsicker's parents. After her father died, I reconnected with her mother. I have known Christine for 22 years.

Christine is a very generous and compassionate person. She is a pleasure to be around, always making me feel like one of the family. Since I have known her, she has rescued two dogs that nobody else wanted. Both dogs had health issues and she has given them a good home and a new healthy life. She is always there for her mother and I, helping when we need it.

In the last year she has admitted her mistakes and taken blame for what happened. She does whatever the system asks of her, without complaining.
Christine is an intelligent woman who always strives for perfection, working hard to achieve this. She is a good person who made a bad mistake.

I personally have no children, but I would be honored to have her as a daughter. I'm ready to help her move on with her life however I can.

Sincerely,
Deb Stenack

A.162

Andrew "Drew" Faulkner



June 22, 2026

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Dear Judge Oetken:

My name is Andrew C. Faulkner, and I am a 49-year-old business owner and founder of
Woodgrove Solutions, LLC, a small business in the Washington, D.C. metropolitan area. I am a
1999 alumnus of Princeton University, where I majored in Mechanical Engineering and minored
in African-American Studies. I am also a former member of the Princeton University football
team and a proud member of the 1995 Ivy League Championship squad. It was during that
milestone year that I had the good fortune of meeting Christine Hunsicker. We have been close
friends for almost 31 years now.

I vividly remember meeting Christine and several of her field hockey teammates on a hot
afternoon in August 1995. Both of our teams had just finished a grueling set of "two-a-day"
practices, and we sparked up a conversation, commiserating over how hot and exhausted we all
were. From that point on, I don't remember much of my time at Princeton that didn't involve
Christine and this amazing group of women. Several of my football teammates and I really hit it
off with them. We all shared similar backgrounds: hard-working student-athletes from mostly
small towns, strong students, and high-performing competitors who felt incredibly blessed to
attend such a wonderful university. The bond between the Class of 1999 football and field
hockey teams became exceptionally strong that summer and only deepened in the years that
followed—a bond that persists to this day.

While we don't get to see one another on a daily basis anymore, the opportunities we do have to
reunite (such as Princeton Reunions) allow us to fall right back into our comfortable, familiar
routines. Our group of former student-athletes still operates very much like a band of brothers
and sisters. It is during these times that Christine and her teammates refer to me as "Drewby" – a
moniker used by only a handful of female friends on the entire planet. Hearing Christine or any

A.163

of them utter that nickname always brings a smile to my face, instantly reminding me of the wonderful times we shared as we evolved into adults during our late teens and early twenties.

Looking back at the late 1990s, there are hundreds of wonderful anecdotes that illustrate the genuinely good person I know Christine to be. One story in particular perfectly captures her character, dedication to family, and selfless nature.

In January 1996, five of us—two football players and three field hockey players—decided to use our "Intersession" break (the winter gap between semesters) for a "family" road trip in my 1989 Mazda 323 sedan. We planned an ambitious itinerary with stops at a family member's house for each of us, spanning New Jersey, Ohio, Michigan, Ontario, and upstate New York. I remember how passionately Christine lobbied for us to go out of our way down to southwestern Ohio to visit her brother. She openly shared that they hadn't been particularly close growing up and that he wasn't thrilled with his current life in the Cincinnati area. Because of that, it meant the world to her to stop by, check on him, and spend some quality time cheering him up. Christine wanted to do all of this despite the fact that her brother hadn't reached out once during her grueling freshman field hockey season. We easily could have bypassed the stop and driven straight to northwest Ohio where my parents lived, but Christine's deeply protective, caring nature wouldn't allow it. The way she spoke about her brother during that drive solidified my understanding of just how deeply she cares for others. That same watchful, supportive eye was extended to me personally on several occasions during our undergraduate years; she was always a shoulder to cry on, particularly when my father had to undergo unexpected heart surgery.

I write this letter simply to state that while I haven't had the opportunity to see Christine frequently since 2019, I still hold her in the highest regard. I view her as a sister. The foundation we built starting in 1995 is unbreakable. My love and respect for her are unconditional. I know with certainty that if she walked into the room right now, she'd hug me and call me "Drewby" just like we were eighteen-year-old freshmen again. I say this knowing that she is human, and like all of us, makes mistakes. That does not change how I feel. I will remain in her corner for life and will support her unconditionally, just as she did for her brother back in the winter of 1996.

Respectfully submitted,

Andrew "Drewby" Faulkner

A.164

**Adrienne Breslin, Esquire**


June 28, 2026

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

*Re: United States v. Christine Hunsicker*

Dear Judge Oetken:

I write to Your Honor in connection with the sentencing of Christine Hunsicker, whom I have known for thirty-four years. I am an attorney, and I offer this letter with a full understanding of Christine's misconduct. I do not write to minimize what she did. I write because I believe that this Honorable Court should also know the person whom I have known - the full human being behind the conduct - as you undertake the difficult task of determining a just and appropriate sentence.

Christine and I first came to know each other as teenage competitors on the soccer and field hockey fields of Pennsylvania. We were rivals before we were friends - the kind of rivals who push one another to be better. That competitive fire, that resolve to rise to a challenge, was evident in Christine from the very beginning. We both went on to attend Princeton University, and it was there, as young women navigating a demanding institution together, that our friendship truly deepened. Over the thirty-four years since, through marriages, loss, and the ordinary struggles of life, Christine has been a constant presence for me.

The Christine that I know is someone of genuine warmth and uncommon loyalty. She is the friend who answers the phone, who listens without judgment, and who shows up. Over three decades, I turned to her in difficult moments, and she was always there - steady, honest, and trustworthy. She is a person of mental toughness who I long looked up to for her strength of character. She has given generously of her time and resources to charitable causes and has remained deeply engaged with the Princeton field hockey program, giving back to student-athletes and mentoring young women in ways that reflect a sincere commitment to community and to the next generation.

I will not pretend that what Christine did was anything other than profoundly wrong. What I can tell this Honorable Court is that the Christine I have spoken with since her plea is not a person who minimizes what she did or who fails to understand the damage she caused. She is remorseful in a way that goes far beyond legal necessity. I have known this woman for more than three decades, and I know the difference between performed contrition and genuine reckoning. What I see in Christine today is the latter.

A.165

I recognize, Your Honor, that a letter from a friend can only offer so much in the face of the record before the Court. I do not ask you to set aside Christine's wrongdoing. I ask only that, in weighing an appropriate sentence, you consider the whole person: a woman who built meaningful relationships over a lifetime, who gave generously to her community, who is devoted to her family, and who, having committed serious wrongs, appears to understand fully what she has done and what she has lost. I believe Christine Hunsicker has the capacity to make amends, to contribute meaningfully, and to live the rest of her life in a way that reflects the better person I know her to be.

Respectfully submitted,

Adrienne Breslin, Esquire



June 18, 2026

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Dear Judge Oetke

I am writing this letter in support of Christine Hunsicker.

My name is Beth Bozman and I was Christine's field hockey coach at Princeton University. Christine also worked for me in the capacity of a camp coach throughout her undergraduate years. I have known her for 34 years and in all of that time I have always known her to be hard working and driven; a healthy balance of humor, sarcasm and intellect; and truthful and accountable. I have always known that I can believe what Christine tells me.

I first got to know Christine as a high school athlete being recruited by top Division 1 college teams. She was from a lower income family and the first in that family to attend college. In spite of the many scholarship offers, she chose to attend Princeton because as she said, "she had worked far too hard throughout high school to go to a school where any talented athletes could be admitted. She wanted to be rewarded for her academic success and continue in an environment that nurtured academic success." Now, after 30 plus years I am paraphrasing Christine. But I vividly remember her telling me why she had chosen Princeton, forgoing athletic scholarships and instead opting for student loans and work study at a non-scholarship university.

Christine went on to excel both academically and athletically at Princeton. She was a member of the first Ivy League team to advance to the Division 1 NCAA Final Four. Her team accomplished that feat three times and advanced to the National Championship game twice. She was named to multiple All Ivy Teams and selected as an All-American.

A.167

medical treatment for back pain.  She was diagnosed with a vertebral stress fracture, a diagnosis that she did not disclose to Princeton's medical staff or me when she returned for pre-season practice in August.  Christine was always willing to "take one for the team".  That's often an admirable trait for an athlete but it can also lead to grave results.  I suspect this mindset/habit came into play in this legal situation, but as she admitted to me, it was with far greater consequences.

When I first spoke to Christine after her arrest she said "I thought you'd be mad at me".  The weight and guilt she felt was palpable, but the heavy feeling that she had let me and many others down was heartbreaking.  I've known since first meeting her that she has always carried the heavy burden of needing to excel and succeed.  Average has never been an option for Christine… the need to rise above her lower economic childhood; the first to not only go to college but to go to an Ivy League school; to create and develop newer and better things.  But this wasn't about succeeding or failing, our conversation was her full confession about what had happened and what she had done.  Full transparency and an apology to me and everyone she had hurt.

Because of this drive I have seen her struggle through the years… An eating disorder; failed relationships; higher ups and lower lows than many of us experience.  But she always seemed to come back stronger and more confident.  This is different.  She is humbled and remorseful. She still believes in her abilities but she also recognizes her weaknesses and she's resolute in living with those weaknesses.  Christine said to me "I know that I can't be a CEO."  She summarized that by saying a CEO plays right into her worst character traits.  I found that to be a very self-aware conclusion and evidence of her considerable growth and self-acceptance through all of this.

Christine has had remarkable success and success that came relatively quickly.  She Is (was) a self-made millionaire many times over.  Her drive, creativity and risk taking seemed boundless.  Until now.  So what will she do if she doesn't aspire to be a CEO?  She has already started doing it. Drawing on her childhood experiences as an athlete and the many areas where she feels that she has fallen short, coupled with the extensive therapy she is undergoing, Christine has developed a program for adolescents.  The program is focused on teaching values, responsibility, self-belief and confidence.  It is an awards based system and it is currently being implemented at a number of summer camps throughout the U.S.  This is not a business venture.  This is a purely altruistic project to assist kids to excel where she failed.  She is also working on an 8 step program to develop similar traits in inmates.

I have many incredibly successful graduates from my program at Princeton. Rhodes Scholars, Doctors, Lawyers, college professors, even a famous actor.  I hold all of them in high regard.  High regard not just for their achievements but equally for their character.  I consider Christine a solid member of that group.

I've always believed that one mistake does not a bad person make.  Especially when that person owns the mistake, takes full responsibility and is committed to being a better person like Christine. She has a very strong support system standing with her.

We are with her now and we will continue supporting her through this because we know the person she is. Thank you for considering all of the things that Christine's supporters have said about her and the potential of this truly remorseful person, who we all love.

Sincerely,


Beth Bozman
Retired Princeton/Duke Field Hockey Coach

████████████

A.169

Ernest Stefanelli



23 June 2026

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

**Subject: Christine Hunsicker**

Dear Judge Oetken

My name is Ernie Stefanelli, and I am writing you in support of Christine Hunsicker and her pending sentencing. Christine and I went to school together at Princeton and became close friends during the fall of our freshman year. So, I have known Christine for 30 years. During our time at Princeton, we were very close friends. The two of us were certainly part of a larger group of friends between the football and field hockey teams at school, however Christine and I were part of a more close-knit group. Being part of the field hockey team, Christine was also one of the people who introduced me to my eventual wife of 23 years, who was a captain of Chritine's field hockey team. Christine and I also eventually lived in the same house our senior year while we were officers at the Cap and Gown Club.

Christine was always a hardworking, competitive, driven and loyal person. As freshman, Christine and I lived in neighboring residential colleges, but ate in a shared dining hall. I remember seeing her as a freshman working in the dining hall knowing she was also an athlete and having to balance working, being an athlete and the rigors of an intense academic curriculum. I was impressed. Her work ethic was then also accentuated by her competitiveness on the field hockey field. Which led her to be a tremendous teammate and garnered her numerous accolades. Christine had the talent to be on a top team in the county at the time and the competitiveness to steer the team to compete on the national stage numerous times in her career.

All this though is overshadowed by her loyalty as a friend. Anyone who was Christine's friend knew they could count on her no matter what the ask or the time of request. For me, this was most highlighted in 2007. Christine and I were certainly very close in college; however, we didn't see as much of each other after we left school. Nevertheless, in 2007, when I left my current job to start my own consulting group, I reached out to Christine to

see if I could talk with her about her experiences as an entrepreneur. Even at that young age Christine was highly successful and a very busy person. However, without a second thought she met me for dinner to discuss her experiences and offer her support in a very uncertain time for me. I was truly very grateful for that and have never forgotten her eagerness to help me. Since that time, Christine and I have grown more out of touch and would only see each other at school reunions and functions. However, I know if I ever reached out to her, she would certainly help me in any way I needed. That sort of loyalty is hard to find these days.

I have been following Christines case from a distance and have not spoken with her or corresponded directly with her only out of respect for her privacy in this very difficult time. But I have stayed in touch through mutual friends throughout the case. And while I haven't had discussed anything with her directly, I firmly believe I still know who Christine is as a person. I am certain she is still the hard-working, driven and loyal person I knew so many years ago; and, to that end, I am here in support of her.

Thank you for your time and consideration.

Sincerely,

Ernest Stefanelli

A.171

# DR. ALISON JANES

June 9, 2026

Judge Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

**Dear Judge Oetken,**

Thank you for the opportunity to write on behalf of my friend Christine Hunsicker. I first met Christine in August 1995 when we arrived for preseason and began our journey playing Field Hockey for Princeton University. We became close friends and spent many hours together training and traveling with the team. We also developed a strong friendship outside of Field Hockey, studying and socializing as well as travelling together during school breaks. We both majored in English Literature and shared academic ideas as well. Since graduating from Princeton in 1999 we have stayed in touch periodically, meeting now and then for reunions, weddings (including mine), trips with friends and visits to her home.

Currently I live in my hometown of Coquitlam, British Columbia with my husband and 3 children. I work as a physician, specifically a Hospitalist, at Eagle Ridge Hospital in Port Moody which is close to where I live. I trained in Medicine at the University of British Columbia and did my residency in Family Medicine at Memorial University of Newfoundland. I use my maiden name Morris professionally.

The 4 years we spent together at Princeton were some of the best years of my life, but they weren't without many personal, academic and athletic challenges. Field Hockey was extremely demanding with 2-hour practices plus weightlifting daily, as well as frequent travel to games. We also worked (Christine more than me) to help support ourselves and studied hard. Beyond our obligations, we also, as most young adults do, navigated relationships and strove to figure out who we were and wanted to become. During this time, I looked up to

A.172

Christine's strong work ethic, resilience, drive to connect meaningfully with others as well as her general interest in both improving herself and helping those around her. Whether it be recovering from a poor grade on a paper, not meeting expectations on the field, or personal conflict, I have seen her learn and grow from her mistakes. I have also seen her reach out to others who need support. She was a loyal friend to me in college and still is.

Although I now live far away from Christine and we are not in frequent contact with each other, I still consider her one of my closest friends. If I needed help, I would reach out to her and be confident that she would do what she could for me. She is loyal and generous, sending gifts to my children when they expressed interest in puzzles, treating us to a baseball game when we were visiting because we had expressed an interest, hosting us at her appartement or house, picking us up at the airport, really going above and beyond to take care of us when we meet.

We have had many reflective and introspective conversations over the years that show that Christine is deeply caring, continuously working on personal growth and trying to improve the lives of those around her. During covid she expressed great concern about employees who were in countries without access to adequate medical care. We spoke and problem solved about her efforts to acquire oxygen tanks to help her workers should they become ill and oxygen not be otherwise available due to a stressed medical system. Even the inspiration for her business was a desire to help plus size women access high quality fashion. I also know that Christine has supported family members financially and has made substantial donations to different organizations which, being a humble person, she rarely talks about. Again, Christine has been a good friend to me over the years; she listens well and has helped me work through my own challenges.

Christine is very intelligent and creative, I have dreamt of working with her professionally, particularly after conversations with her regarding the health care challenges in my community. I am always impressed by her insights and thankful for her perspective. I know Christine is very remorseful of her mistakes and I also know that she will work hard to repair the damage and grow from the experience. I am confident she will not make the same mistake again and instead that she will recover and return to her path as a positive force in society.

2

A.173

Sincerely,

Dr. Alison Janes

3

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007


Judge Oetken,

My name is Jason Pawlowski. I live in Alpharetta, GA, with my wife and two children. I am a Vice President of IT in supply chain. I also volunteer in our community – coaching over 30 teams for my kids, and in volunteer roles over the years including President of my HOA, President of our Youth Lacrosse league, and various other roles on our local high school athletic boards.

I met Christine at the start of our freshman year of college, as she lived down the hall from me in the dorm. We were both attending a college out of our home states, and were both varsity athletes (she played field hockey, I played football). She quickly became one of the first friends I made outside of my team.

Christine and I would spend many days after classes and practice talking in the dorms or over meals. From those early days, she was engaging and thoughtful. She opened up about struggles that she overcame at an early age, and I was always impressed with her perseverance. We would commiserate over the challenges of balancing classes with athletics, but we always found time to hang out with friends and relax. It didn't take long before Christine introduced her group of friends to mine, and that formed the core of a friend group that stayed very close throughout college and beyond. That group of friends spent nearly every week at school together, and even went on trips at breaks.

Junior year of college Christine and I were elected by our peers to be officers at our social club, which meant that we were two of seven officers that lived at the house our senior year. Christine was elected to be the treasurer of our club. She brought her organizational skills and drive to that role, successfully managing the budget of the club to ensure that the meals and social activities went smoothly all year for our 120+ members. I also saw the hard-working side of Christine, many evenings when we'd be cleaning up the club after an event long after our members had gone home. Our officer positions were volunteer roles, but we both did it because we enjoyed the social opportunities that the club offered, and wanted to do our part to make sure all members enjoyed it the same way we did.

After college our group of friends remained close. As we moved to different cities, I didn't see Christine as much, but still caught right back up where we left off whenever we did get

A.175

together at friends' weddings or class reunions. I was impressed with the career that Christine built, but wasn't surprised based on the characteristics I saw first-hand through our years at college. Her humble nature, perseverance, drive and willingness to serve others naturally led to her success.

Based on the Christine that I know, I was surprised to hear about this offense. I will continue to remain her friend, and am here to support her in whatever way that I can.


Regards,

Jason Pawlowski

Molly Watts



June 16, 2026

The Honorable J. Paul Oetken

United States District Judge

Southern District of New York

40 Foley Square

New York, NY 10007

Re: Christine Hunsicker

Dear Judge Oetken,

My name is Molly Watts, and I am writing in support of my lifelong friend, Christine Hunsicker. I have known Christine for more than thirty years. We met as freshman field hockey players at Princeton University. I am a business owner, and my career has included work in Medicaid and long-term care policy at the White House, at independent foundations, at universities, and in consulting.

At Princeton, Christine and I connected easily because of our shared rural Pennsylvania roots and working-class upbringing. We were not typical Princeton students, but our team was made up of women who excelled in the classroom and on the field while also holding campus jobs through the work-study financial aid program. Christine had many jobs in college and handled those pressures admirably despite her health challenges.

I competed against Christine every day in practice. As a forward, my job was to score goals, and as a defender, her job was to stop me. The daily competition gave me a close-up view of her toughness and character. She was the kind of teammate others trusted, and her discipline and

A.177

competitiveness made the people around her better. Even after a tough practice, Christine could quickly transition to laughing and telling stories, never dwelling too long on setbacks. She was deeply committed to the success of our team and helped lead Princeton to three Final Fours and two appearances in the NCAA Division 1 national championship games.

After graduation, Christine pursued a variety of careers and opportunities with the same energy and determination she had shown in college. Even during her busiest years, she remained present in the lives of the people she cared about. She took seriously her responsibility to support her family and gave generously when they needed help. She helped pay for her niece's college education and contributed to organizations like Princeton field hockey and USA field hockey that meant so much to her. Her friends often looked to her for advice, and she always gave it willingly. When family members or friends needed help finding jobs, she mentored them. She took on the role and responsibility of being someone others could rely on. I believe she still has the capacity to be that person.

Over the years, I have known Christine to be intelligent, driven, and exceptionally hardworking. She has always been someone with big ideas and the energy to pursue them fully. At the same time, she has been a loyal friend, devoted daughter, sister, aunt, and a person who has inspired others with her ambition and generosity. My experience of Christine over three decades has been shaped not only by what she has accomplished, but also by the care she has shown to the people around her.

I know Christine can continue contributing positively to the world. She is a thoughtful problem-solver whose life experience has given her the ability to connect with many kinds of people. She cares about people and about contributing to the world in a meaningful way.

I offer this letter with full respect for the seriousness of these proceedings and in the hope that the Court will consider the full picture of Christine's life, character, and capacity for good moving forward. Thank you for your time and consideration.

Sincerely,

Molly Watts

A.178



6:37

190

Sat, Feb 21 at 7:16 AM

Hi **Christine**  Just wondering what it must like to be you

Sat, Feb 21 at 9:34 AM

I'm surprised you have the fortitude to face what's ahead  I thought you pull an Epstein by now.    When you came to my house , stole my money how did that feel ?

Did you know all long what a pathetic failure you were

Blow hard know it all

A.179

You're a laughingstock.   A sad pathetic little human.   What you did to so many people who trusted you.   I hope every day of life is filled with tears.

Perhaps you should help the government nab your accomplices on the board Jp and googl guy .   Maybe that

 iMessage

6:37 🔕

  

now.    When you came to my house , stole my money how did that feel ?

Did you know all long what a pathetic failure you were

Blow hard know it all

You're a laughingstock.  A sad pathetic little human.  What you did to so many people who trusted you.   I hope every day of life is filled with tears.

Perhaps you should help the government nab your accomplices on the board Jp and googl guy .   Maybe that

can move forward any redemption possible. I doubt it. There are not too many people as loathsome as you . Pathetic lying stealing piece of shit. .

**Edited**

Know how much you are despised.

 

**From:**         Scott Callon - Ichigo Asset Management ███████████
**on behalf of**  Scott Callon - Ichigo Asset Management ███████████
**Sent:**         12/15/2024 7:16:24 PM
**To:**           jpsingh ██████████
**Subject:**      FW: CaaStle – Urgent and Confidential

**From:** John Hennessy ██████████
**Sent:** Thursday, November 28, 2024 11:12 AM
**To:** Scott Callon - Ichigo Asset Management ██████████
**Subject:** Re: CaaStle – Urgent and Confidential

I think we should talk to ██ first. Several things He relayed are extremely concerning! ██ has brought his attorney in. I know a number of SV attorneys. In such a case, the board would normally engage an attorney.

To start, what's your schedule like early next week?
John

On Wed, Nov 27, 2024, 5:51 PM Scott Callon - Ichigo Asset Management ██████████ wrote:

Hi, John. Oh no. This is deeply, deeply concerning. (Needless to say, it's news to me, too.) We should get on this ASAP. It's Thanksgiving, so presumably a terrible time for everybody. Shall we try to set a meeting early next week?

I can't imagine that JP knows about any of this. When I spoke to him last, I got the impression that he is leaving the day-to-day execution of CaaStle overwhelmingly to Christine. My instincts are that we should bring him into the ██ conversation. Are you OK with that? Or would you prefer to wait?

Thanks,

Scott

**From:** John Hennessy ██████████
**Sent:** Thursday, November 28, 2024 6:29 AM
**To:** Scott Callon - Ichigo Asset Management ██████████
**Subject:** Fwd: CaaStle – Urgent and Confidential

Scott,

I am forwarding you this worrisome email I received. This is news to me. ██ suggested we talk with him before we discuss this with Christine. Not sure what JP knows.

Thoughts?

Happy Thanksgiving!
john

**Confidential**                              A.183                    **JS 00001-00202**
SDNY_REL_01_01032218

---------- Forwarded message ---------

From: ████████████████████████████

Date: Wed, Nov 27, 2024 at 11:01 AM

Subject: CaaStle – Urgent and Confidential

To: John Hennessy ███████████████████

Cc: Bell, Martin S. ████████████████, Polster, Joshua ██████████████████

Mr. Hennessy,

I hope this finds you well. As you may recall, I represent ███████████ as it relates to his personal investments, and we briefly connected this past June regarding CaaStle.

As you may have heard from Christine, I was presented disturbing information about CaaStle recently and I would like to ask for your assistance in getting to the truth.

In October, I requested the most recent financial audit of CaaStle from Christine. Christine informed me that she would not email me a copy of the audit report, but that I could view the audit report in person at her office. On 10/30/24, I sat in Christine's office and read a CaaStle audit report dated 8/30/24 and signed by BDO. The first concerning observation I had was that page 7 was missing, and I received an unsatisfactory explanation from Christine as to why. Subsequently, I was informed by a source that BDO, does <u>not</u> have a record of issuing an audit this past August. In fact, I understand from our source that CaaStle is no longer an active client of BDO.

Upon learning this conflicting information, I presented our observations to Christine on 11/18/24 and asked that I be connected with her BDO auditors so that I could confirm that BDO indeed issued the audit dated 8/30/24. Christine informed me that she needed to first speak with her Board. I subsequently followed up with Christine and we connected again yesterday. Christine informed me that she "understand[s] what has happened here and there is an issue." She went on to state, "It's probably best for everybody that I don't share more." She also offered to buy our shares back. My interaction with Christine yesterday only heightened my level of concern.

I come to you as Chairman of the Board and request the Board conduct an investigation into the financials of CaaStle and the validity of the document I was shown on 10/30/24. We further request to be updated once appropriate investigative action has been taken. I have copied my counsel at Simpson Thacher. We will make ourselves available to you as needed during your inquiry into this highly concerning situation.

It's not my intention to disturb your holiday, but I wanted to get this information to you as soon as possible.

Regards,

████████████

cc: Martin Bell, Joshua Polster, Simpson Thacher & Bartlett LLP

**Confidential**                                    A.184                                    **JS 00001-00203**

SDNY_REL_01_01032219



--

**John Hennessy**
James F. and Mary Lynn Gibbons Professor of Computer Science and Electrical Engineering
Shriram Family Director, Knight-Hennessy Scholars
**Stanford University**

**Confidential**

A.185

**JS 00001-00204**
SDNY_REL_01_01032220

# The In Between

*By Christine Hunsicker*

## (Filed Under Seal)

A.186 to A.282

A.283 to A.751

# Hunsicker Medical Records
# (Filed Under Seal)

A.283 to A.751

# Hunsicker Medications List
# and Scope of Treatment
# (Filed Under Seal)

A.752 to A.765