# EXHIBIT A

# Victim Impact Statement No. 1

Date:     Mon, 27 Apr 2026 7:01:55 PM (UTC)

Sent:     Mon, 27 Apr 2026 7:01:22 PM (UTC)

Subject:  [EXTERNAL] RE: U.S. v. Christine Hunsicker, 25 Cr. 318 (JPO) - Victim impact statement and restitution

From:     Alan Aaron ████████████████████

To:       Colson, Marguerite (USANYS) <Marguerite.Colson@usdoj.gov>; Rothman, Alexandra (USANYS) <Alexandra.Rothman@usdoj.gov>;

My victim impact statement:

I first met Christine at the offices of Guggenheim Securities in either December 2019 or January 2020. I was friendly with ████████████ another investor, and he had been telling me about Gwinnie Bee for a few years so when he arranged for Christine to meet with investors I took the opportunity. I was extremely impressed with Christine and the story she had to tell, I believe nearly everyone she met with over the years was impressed. She had sold her two previous companies for hundreds of millions of dollars, and she was confident and arrogant, but not in a way that turned investors off, in fact quite the opposite. In February 2020, I made my first investment in Caastle, $150,000 in my IRA. Over the next few months, I told friends and colleagues about Caastle, and about 6 colleagues invested and at least one friend invested, though none of them over time invested as much as I did. I remember going up to the Caastle offices to meet with Christine again in person in early 2020 I believe, and after my colleagues and I first invested, I wanted to make sure I stayed on top of the story so we started doing quarterly zooms with Christine, and this continued until late 2024, right before I found out about the fraud. I would text Christine frequently over the years, asking her questions, and also trying to help her make contact with CEO's of specialty retail companies, as I follow the public company specialty retailer stocks for a living at the hedge fund I work at. We spoke to Christine quarterly without fail, I wanted to stay on top of my investment, and also felt a sense of responsibility to my colleagues since I first brought the investment to their attention. I invested another $100,000 in August of 2021, as I believe at that point the company did a formal raise through Goldman at about a $1.3 billion valuation, and I was able to invest at a slight discount to that. I also invested another $100,000 and $75,000 when Christine called and said I could buy stock at a $200mm valuation because one Caastle employee's parents had a medical emergency, I forgot what the other lie was she told us the second time. I did ask at the time if it was too good to be true investing at the $200mm valuation, and also why she approached me and my colleague, and she was very convincing and said it wasn't too good to be true and she approached us because she thought we could make a quick decision and get her the money quickly.

Over the years, she told a great story. Though the business supposedly slowed during the beginning of covid, it got right back on track quickly, and I always asked how the prior quarter was and how the company was doing on an annual basis and what they were planning for the next year. At one point, I did ask for audited financials and she supplied them to me, maybe for 2021, and ████████████'s firm had a board seat I believe or were early investors so he spoke to and met with her frequently and would pass on that info to me, so I felt like I had all the bases covered and I was staying on top of the story as best I could. Little did I know that EVERYTHING WAS A LIE FROM THE MOMENT I MET CHRISTINE! I invested a total of $425,000, I thought Christine was going to sell the company for $5 billion, and I would make a few million dollars and would be able to retire possibly at that point (I am 55 years old now). I knew that she had recruited what I understood were reputable people to be on the CaaStle board, including John Hennessey, a long time Alphabet director.

When I first heard about the fraud from a friend, my heart stopped beating for a minute, and for weeks I kept replaying in my head all the meetings and conversations i/we had with Christine over the years, nearly every quarter for 5 years. I figured that the business was a real business at the beginning when I invested, and maybe had problems during covid and never recovered, I didn't know that it was ALWAYS A FRAUD even from my first investment. Supposedly she made hundreds of millions of dollars from her first two companies, if Gwinnie Bee/Caastle didn't work, I wish she would have just admitted that and she down the business, maybe I would have only lost $150,000, or maybe she would have shut it before I even invested. I don't understand why Christine just didn't shut things down, why did she have to perpetuate the fraud for so many years, and how did

she perpetuate the fraud for so many years??? Why keep lying to so many people? Why keep wasting so much of her own money supposedly over the years to keep the business afloat?  She supposedly made hundreds of millions of dollars on the two prior companies, she could have just lived comfortably the rest of her life, just shut the business down when it wasn't working and move on. Was it pride? Arrogance?
I certainly lost a lot of money, but luckily I am still young and have had a very successful career at the hedge fund I work at, and still have many profitable years in front of money, but I will always be bitter about what happened with Caastle and Christine. Why would she throw her life away?  What would she ruin so many people's lives? I would still love to know why she did it, just for my own piece of mind, but its not going to change anything. I will go on with my life, but will always be bitter about how I was lied to the ENTIRE TIME and how she betrayed me and so many others. The fact that she wasted over $500 million of investor money on a business that was always a fraud is despicable. How can anyone be so evil???

Alan

Alan Aaron, CFA
*Partner & Portfolio Manager*

**JG & C**
J. GOLDMAN & CO., L.P.



NEXT GENERATION
TRUST COMPANY

HOME        POSITIONS        ACTIVITY        STATEMENTS & DOCUMEN

# Victim Impact Statement No. 2

**Victim Impact Statement Submitted to:** U.S. Department of Justice, Southern District of New York (and copy to U.S. Securities and Exchange Commission) Re: United States v. Christine Hunsicker (Case No. [insert if known]; Sentencing scheduled for August 5, 2026)

**Date:** 4th May 2026

**My Name:** Aniket Bakshi **Relationship to Victim:** Current shareholder and son of original investor Tarun Bakshi **Contact Information:** █████████████████████████

Your Honor / Dear Victim Witness Coordinator (Valeen Defendre) and Prosecutors,

I am writing this Victim Impact Statement as the current shareholder of Gwynnie Bee, Inc. (later CaaStle, Inc.) and the person who now bears the full financial loss caused by Christine Hunsicker's fraud. My father, Tarun Bakshi, originally invested USD 1,000,000 of his personal savings in two separate tranches between 2011 and 2013. In 2018 he gifted those shares to me, making me the legal shareholder today.

My father is the founder and CEO of Triburg, one of the leading apparel buying offices and sourcing agencies in India and across Asia. Triburg has built a decades-long reputation for integrity, reliability, and expertise in global fashion supply chains. Christine Hunsicker personally reached out to him in 2011 when she was in the very early stages of starting Gwynnie Bee. She sought not only capital but also potential sourcing services and industry expertise from Triburg. My father placed complete good-faith trust in her and in the company. He invested his own hard-earned savings without the kind of rigorous due diligence he would normally perform for a business transaction of this size, precisely because he believed in Christine Hunsicker's vision and because she had personally approached him as a credible entrepreneur in the apparel space.

For years my father assumed everything was progressing well. He did not closely monitor the investment because Christine and the company consistently conveyed that all was fine. In 2018, when the shares were transferred to me, I reached out directly to Christine Hunsicker and to the company's then-CFO, Jaswinder (Jaswinder Pal Singh). Both of them reassured me that the investment was performing very well and that the company continued to grow strongly. These positive updates continued into 2021. At no point were we given any indication of serious problems, financial distress, or the kind of misconduct that has now been admitted in court.

The consequences of this fraud are severe and ongoing for my family. The USD 1 million represented meaningful personal capital that could have been deployed to strengthen and expand Triburg—our family's core business—or held as a critical safety net during economic downturns in the volatile apparel industry. Because of the total (or near-total) loss of this investment, we have lost important growth capital and financial security at a time when the global fashion supply chain faces rising costs, supply disruptions, and margin pressure. This is not abstract "investor money"; it is money taken directly from a family business built over decades through honest hard work.

Beyond the financial harm, the betrayal of trust has been deeply painful. My father invested in good faith because Christine Hunsicker approached him personally and because the apparel

2

world is a relationship-driven industry. That trust was exploited. The repeated reassurances we received even after I became the shareholder prolonged the deception and prevented us from taking any protective steps. We now face the reality that capital we counted on for our own legitimate business is gone, while Christine Hunsicker used fabricated financial statements, fake audits, and misleading representations to raise hundreds of millions of dollars.

This crime has undermined not only our family's financial position but also our confidence in early-stage investments in the very industry my father has served honorably for his entire career. The loss feels especially bitter because the original pitch was built on a potential partnership between Gwynnie Bee and Triburg's sourcing expertise—an opportunity that never materialized while the investment itself was destroyed.

We respectfully ask the Court to consider the real human and family impact of this fraud when determining sentence. A loss of this magnitude to a family-owned business like ours is not easily replaced. We hope that the significant forfeiture already agreed to by Ms. Hunsicker will result in meaningful restitution to victims like my family so that at least some portion of the capital we trusted her with can be returned.

Thank you for the opportunity to submit this statement.

Sincerely,

Aniket Bakshi Current Shareholder, Gwynnie Bee, Inc. / CaaStle, Inc.

2

71197/0001-53105456

# Victim Impact Statement

# No. 3

July 28, 2026

The Honorable J. Paul Oetken
United States District Judge
United States District Court
Southern District of New York

**Re: United States v. Christine Hunsicker**
**Victim Impact Statement of Yanming Cai**

Dear Judge Oetken:

My name is Yanming Cai. I respectfully submit this statement as a victim of Christine Hunsicker's securities fraud and in advance of her sentencing on August 5, 2026.

I invested $100,000 of my own funds in CaaStle. I met Ms. Hunsicker through a Columbia Business School Executive MBA entrepreneurship course, and she solicited my investment in connection with that academic and professional setting. That setting mattered because it conveyed credibility and trust. Ms. Hunsicker was the founder and chief executive officer of CaaStle, and I understood that I was being offered a legitimate investment in a successful private company. I relied on the information and assurances provided in connection with that investment. Had I known the truth about CaaStle's financial condition, the fabricated financial information used to raise investor funds, or the misuse of investor money, I would not have invested.

In her direct correspondence with me, Ms. Hunsicker shared purported CaaStle revenue information to support the investment opportunity and to portray the company as financially successful. As an individual investor, I did not have access to CaaStle's internal accounting systems, bank records, or underlying books and records, and I reasonably relied on the company's founder and chief executive officer to provide accurate financial information. I later learned that the revenue information used to solicit investors had been materially falsified and inflated. The criminal case describes altered financial statements that inflated CaaStle's fiscal-year 2021 revenue by more than $100 million and falsely reported fiscal-year 2022 net revenue of approximately $230 million when the actual amount did not exceed $20 million. Looking back at Ms. Hunsicker's correspondence with me, I am left with the disturbing impression that she assumed individual investors would not have the access or detailed financial knowledge needed to discover the falsehoods. That calculated exploitation of the information gap between a company founder and an individual investor made the betrayal even more serious and personal.

I transferred $100,000 and received documentation reflecting my purchase of CaaStle shares, including a stock purchase agreement, a shareholder agreement, and confirmation of payment. CaaStle later entered Chapter 7 bankruptcy, and the shares became worthless. To date, I have recovered none of the $100,000. My current direct financial loss is therefore $100,000,

subject to reduction by any future recovery through bankruptcy, forfeiture, restitution, or another source.

The financial loss has had a real effect on my family. One hundred thousand dollars is a substantial amount of money for us. Those resources are no longer available for our family's future and financial security. This loss cannot fairly be viewed as the ordinary risk of investing. I accepted the normal business risk of a private-company investment; I did not accept the risk that the company's founder would induce the investment through deception and concealment.

The personal impact extends beyond money. Ms. Hunsicker used the credibility of an academic and professional network to gain my trust. Learning that the investment was part of a long-running fraud was deeply distressing and made the loss feel like a profound betrayal, rather than simply an unsuccessful investment. The matter has also required substantial time and attention to gather records, address the loss for tax purposes, follow the bankruptcy and criminal proceedings, and determine whether any recovery may be possible.

What is especially troubling is the duration and deliberateness of the conduct. This was not an isolated misstatement or an ordinary business failure. The fraud involved repeated misrepresentations, fabricated documents, concealment, and continued solicitation of investors over a period of years. The scale of the conduct and the number of victims demonstrate the broader harm caused when a founder exploits investor trust and professional credibility.

I respectfully ask the Court to impose a sentence that reflects the seriousness, duration, and calculated nature of the offense; the substantial financial and personal harm to victims; the abuse of trust; and the need for deterrence. I also respectfully request restitution of my $100,000 loss, to the extent authorized by law, and that victim recovery be given full consideration in the disposition of forfeited or recovered assets.

I appreciate the work of the U.S. Attorney's Office, the FBI, and the Court in addressing this matter and allowing victims to be heard.

Respectfully submitted,


Yanming Cai    *Cai Yanming*

Date: _____

# Victim Impact Statement No. 4

| | |
|---|---|
| **Date:** | Thu, 19 Mar 2026 10:52:09 AM (UTC) |
| **Sent:** | Thu, 19 Mar 2026 10:51:39 AM (UTC) |
| **Subject:** | [EXTERNAL] Victim of CaaStle / Christine Hunsicker Securities Fraud – Shareholder Claim |
| **From:** | Carrie Crow ███████████████████ |
| **To:** | Defendre, Valeen (USANYS) <Valeen.Defendre@usdoj.gov >; |
| **Attachments:** | SPA_Common_3 Carrie Crow.pdf |

Hi Valeen,

I am writing to formally notify you that I am a defrauded shareholder in CaaStle Inc., and to request inclusion in any restitution process, claims program, or victim notification list associated with the recently filed criminal and civil cases against Christine Hunsicker and CaaStle.

I was an employee of CaaStle from July 2019-July 2020, and in November 2020 I exercised 15,000 stock options under the company's 2012 Stock Option/Stock Issuance Plan. I paid a strike price of $1.13 per share, totaling $16,950, please see attached stock memo. At the time of purchase, material misrepresentations were made by company leadership regarding the company's financial health and valuation, including in internal presentations and verbal communications from Ms. Hunsicker herself.

It is now evident that these representations were false, as outlined in the federal indictment and related SEC complaints filed against Ms. Hunsicker in addition to her own guilty plea. I made my investment in good faith, and without access to truthful financials or accurate capitalization data.

I respectfully request to be recognized as a victim of securities fraud in this matter and to receive updates or guidance on next steps, including the opportunity to submit supporting documentation for a potential claim.

Thank you for your attention and for your work on behalf of defrauded investors.

Sincerely,
Carolyn Crow
████████████████████
Brooklyn, NY 11205
--

website: ████████████

# Victim Impact Statement No. 5

| | |
|---|---|
| **Date:** | Fri, 10 Apr 2026 8:30:12 PM (UTC) |
| **Sent:** | Fri, 10 Apr 2026 8:29:48 PM (UTC) |
| **Subject:** | [EXTERNAL] Re: U.S. v. Christine Hunsicker, 25 Cr. 318 (JPO) - Victim impact statement and restitution |
| **From:** | Elizabeth Cutler ███████████████████ |
| **To:** | Rothman, Alexandra (USANYS) <Alexandra.Rothman@usdoj.gov>; |
| **CC:** | Colson, Marguerite (USANYS) <Marguerite.Colson@usdoj.gov>; Rothman, Alexandra (USANYS) <Alexandra.Rothman@usdoj.gov>; Allen Cutler ████████████████ |

Hi Alexie -

Thank you for the email and your work on this case.

This is our victim impact statement:

We met Christine Hunsicker in November 2017 and invested $500,000 in Gwennie Bee/Caastle's Series A-11 via our investment vehicle called Front Row I, LLC. When I refer to we, I refer to myself, Elizabeth Cutler, and Allen Cutler.

Over the years we never received updates from Christine and her team, as is generally standard when making an investment in a company.

I would occasionally reach out to a board member, ██████████ to try to understand what was going on with the company regarding growth, cash flow etc. by December 2024, they were purporting to be close to $200 million in ebitda.

The "numbers" were not shared because Christine did not want to disclose numbers, as the company was doing so well she wanted the utmost privacy, was secretive about information on the company getting out.

I saw a screenshot of a Caastle 2022 Final Audit containing a schedule of stockholder equity.

Restitution payments can be made to

Front Row I, LLC

████████████████████

Thank you for your work in this matter.

Sincerely,

Elizabeth Cutler

# Victim Impact Statement No. 6



|  | **Jonathan E. Algor**<br>Partner | 1251 Avenue of the Americas<br>New York, New York 10020 |
|---|---|---|

T:  (212) 419-6141
E:  jalgor@lowenstein.com

July 24, 2026

**VIA EMAIL**

Marguerite B. Colson, Esq.
Alexandra N. Rothman, Esq.
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
26 Federal Plaza
New York, New York 10278

**Re:**    *United States v. Christine Hunsicker*, **25 Cr. 318 (JPO)**

Dear AUSAs Rothman and Colson:

On behalf of Emigrant Bank ("Emigrant"), we respectfully submit this restitution request pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A and 3664, before sentencing in this matter.

Emigrant seeks restitution in the amount of **$26,538,869.25** as of June 30, 2026, representing the actual and uncompensated losses it sustained as a direct and proximate result of Christine Hunsicker's fraudulent scheme and false statements made in connection with Emigrant's (a) extension of credit to Christine Hunsicker and (b) purchase of Series A-12 Preferred Shares of CaaStle, Inc. In advance of Hunsicker's sentencing, Emigrant respectfully requests that the Government include Emigrant in its restitution submission and support a restitution order in Emigrant's favor in the amount of **$26,538,869.25**.

**Background**

Emigrant Bank is a secured lender and a victim of Christine Hunsicker's fraud scheme. On December 18, 2019, Emigrant extended an $18 million private banking credit facility with a five-year maturity to Hunsicker, under which she could draw monies to purchase agreed equity investments up to $15 million and fund interest payments for up to $3 million. That same day, Emigrant and Hunsicker also executed a pledge agreement, whereby Hunsicker granted Emigrant a first-priority security interest in several assets, including approximately 56 million shares of CaaStle common and preferred stock and other private company investments. A year later, on December 30, 2020, Emigrant amended the Credit Agreement to increase the total credit facility to $20 million, extended the maturity date to six years from the original closing, increased the amount available for equity investments by $2 million, and required Hunsicker to pledge additional collateral, including additional equity interests in CaaStle, among other assets. Throughout Emigrant's lending relationship with Hunsicker, the value of Emigrant's collateral and

NEW YORK  PALO ALTO  ROSELAND  SALT LAKE CITY  SAN FRANCISCO  WASHINGTON, D.C.  WILMINGTON

© 2026 Lowenstein Sandler LLP

lowenstein.com

AUSAs Rothman and Colson                                           July 24, 2026
                                                                        Page 2

Hunsicker's ability to satisfy her obligations were always tied directly to the financial condition and value of CaaStle. Hunsicker made authorized draws under the credit facility totaling $19,281,817.63 through June 30, 2021. She remained current on all required interest payments through December 31, 2025, and, under the terms of the facility, no scheduled principal payments were due until June 30, 2025.

Circle Alternative Investments LLC ("CAI"), a wholly owned subsidiary of Emigrant, purchased 483,871 shares of Series A-12 Preferred Stock of CaaStle for $3,000,000 pursuant to a stock purchase agreement dated June 28, 2020. CAI held these shares as an investment for the benefit of the Emigrant pension fund. Emigrant is consequently a direct investor in CaaStle, in addition to being a lender to Hunsicker.

As the Court is aware, Hunsicker was charged in a six-count indictment arising from her operation of CaaStle and a related venture, P180. According to the Indictment, from at least February 2019 through March 2025, Hunsicker orchestrated a scheme to defraud investors and financial institutions by creating and disseminating false income statements, fabricated audit reports, falsified bank records, and other misleading information portraying CaaStle as a rapidly growing company, when, in fact, it was in severe financial distress. These misrepresentations enabled Hunsicker to raise more than $275 million for CaaStle while concealing the company's deteriorating financial condition.

The Indictment specifically identifies Emigrant as the "Bank" referenced in Paragraph 15. The Government alleges that Hunsicker obtained an $18 million personal loan from the Bank in December 2019, that the loan was increased to $20 million in December 2020, and that she later provided falsified CaaStle financial information to maintain that credit facility. The Indictment further alleges that in 2024 Hunsicker submitted materially false CaaStle financial statements purportedly showing more than $100 million in revenue and over $32 million in available cash, when, in fact, CaaStle's actual revenues and cash were a fraction of those amounts. The allegations concerning Emigrant form the basis for Count Four of the Indictment, charging false statements to a financial institution.

On March 4, 2026, Hunsicker pled guilty to Count Two of the Indictment, securities fraud in the purchase and sale of CaaStle securities. In addition, as part of her plea agreement, she admitted to certain relevant conduct in a Stipulation of Facts, including that "she provided investors with an array of false documents, including falsely inflated income statements, fake audited financial statements, and fictitious bank account records." Hunsicker further stipulated that her conduct resulted in losses exceeding $250 million, agreed to the entry of a forfeiture money judgment for $283,291,940, and agreed to pay restitution in the same amount.

As relevant here, although Hunsicker pled guilty only to Count Two, Count Two incorporates paragraphs 1 through 22 of the Indictment, including the allegations that Hunsicker submitted false CaaStle financial information to the Bank to obtain and maintain the $20 million personal loan. The plea agreement and Stipulation of Facts likewise establish that Hunsicker's



AUSAs Rothman and Colson

July 24, 2026
Page 3

falsification of CaaStle's financial condition was part of the same charged scheme. Accordingly, Emigrant was directly and proximately harmed by the offense of conviction.

### Argument

### I. Emigrant Is A Victim Entitled To Mandatory Restitution Under The MVRA

The MVRA requires restitution for offenses against property committed through fraud or deceit. 18 U.S.C. § 3663A(c)(1)(A)(ii). The "primary and overarching goal of the MVRA is to make victims of crime whole, to compensate these victims for their losses and restore the[m] to their original state of well-being." *United States v. Qurashi*, 634 F.3d 699, 703 (2d Cir. 2011) (internal quotation and citations removed). Under the MVRA, a victim is broadly defined as any person or entity "directly and proximately harmed" by the defendant's criminal conduct, including persons harmed during the course of a fraudulent scheme. 18 U.S.C. § 3663A(a)(2).

The Second Circuit has recognized that financial institutions suffering losses from fraudulent lending schemes qualify as victims under the MVRA. In *United States v. Simmons*, 544 F. App'x 21 (2d Cir. 2013), the court held that a lending institution was a victim entitled to restitution notwithstanding arguments that it should have detected the fraud. The court also recognized that an entity need not be specifically named in the indictment to qualify as a victim where it was directly harmed by the defendant's conduct.

Here, Emigrant falls squarely within the MVRA's broad definition of a victim. Hunsicker did not merely engage in a generalized scheme to inflate CaaStle's value for investors but instead specifically targeted Emigrant by submitting materially false financial information to both initiate and maintain (a) her $20 million loan facility and (b) a purchase of equity shares in CaaStle. Emigrant is therefore not an incidental victim of Hunsicker's fraud but is one of the intended targets of the scheme, as she admitted in the Stipulation of Facts. Like the lender in *Simmons*, Emigrant extended and maintained a credit facility for Hunsicker in reliance on false financial information, only to suffer substantial losses when CaaStle's true financial condition was exposed. As an investor in the equity of CaaStle, Emigrant relied upon the information provided by Hunsicker to purchase and hold the investment. Emigrant therefore qualifies as a victim under the MVRA.

### II. Emigrant's Losses Were Directly And Proximately Caused By Defendant's Fraud

The Second Circuit has explained that MVRA restitution requires both direct and proximate causation. *See United States v. Calderon*, 944 F.3d 72, 94-95 (2d Cir. 2019). Direct causation exists where the defendant's conduct was a but-for cause of the loss, meaning that the conduct was "a necessary factor in bringing about the victim's harm." *United States v. Goodrich*, 12 F.4th 219, 229 (2d Cir. 2021) (quoting *United States v. Marino*, 654 F.3d 310, 322 (2d Cir. 2011). Proximate causation, by contrast, "is a flexible concept [] that generally refers to the basic requirement that there must be some direct relation between the injury asserted and the injurious conduct alleged." *Paroline v. United States*, 572 U.S. 434, 444 (2014) (internal quotations and



AUSAs Rothman and Colson                                           July 24, 2026
                                                                        Page 4

citations removed). The main inquiry is "whether the harm alleged has a sufficiently close connection to the conduct," which courts evaluate by asking whether the harm was reasonably foreseeable to the defendant. *Goodrich*, 12 F.4th at 229 (quoting *Robers v. United States*, 572 U.S. 639, 645 (2014)); *see also Marino*, 654 F.3d at 323-24. Proximate cause, however, need not be exclusive, as "it is common for injuries to have multiple proximate causes." *Staub v. Proctor Hosp.*, 562 U.S. 411, 420 (2011).

That standard is readily satisfied here. The Indictment alleges—and Hunsicker admitted in her plea agreement's Stipulation of Facts—that for years Hunsicker created and disclosed materially false financial information portraying CaaStle as experiencing explosive revenue growth, approaching profitability, and maintaining substantial cash reserves, while in reality CaaStle's revenues were declining, losses were increasing, and the company depended on continual capital raises to survive. As relevant to Emigrant, the Government specifically alleges that Hunsicker submitted falsified CaaStle financial statements to the Bank in 2024 showing more than $100 million in revenue and over $32 million in cash, when CaaStle in fact had less than $16 million in revenue and less than $1 million in cash. Those misrepresentations allowed Hunsicker to maintain her personal loan from Emigrant, and the very purpose of the false financial information was to induce Emigrant to continue extending credit and to refrain from exercising its rights under the Credit Agreement.

Emigrant's losses therefore flow directly from the precise risk that Hunsicker concealed. Had Emigrant known CaaStle's true financial condition and the actual value of the pledged collateral, it could have demanded additional collateral, accelerated the facility, or exercised other contractual remedies before the collateral deteriorated further. Instead, relying on Hunsicker's false representations, Emigrant continued to maintain the loan while the value of its collateral continued to fall. Nor were Emigrant's losses the result of ordinary business risk or market conditions. The risk assumed by Emigrant in extending the secured loan was that the pledged collateral might fluctuate in value based upon *legitimate* business performance. But Hunsicker concealed the fact that the collateral securing the loan was worth substantially less due to CaaStle's declining business operations and dire financial condition. Courts routinely recognize that where a defendant's fraud conceals the very risk that caused the victim's loss, both direct and proximate causation under the MVRA are satisfied. *See* Calderon, 944 F.3d at 85. Such is the case here.

### III. The Court Must Award Restitution Equal To Emigrant's Actual Loss

The MVRA requires the Court to order restitution in the full amount of each victim's losses. 18 U.S.C. § 3664(f)(1)(A). The Second Circuit has repeatedly emphasized that restitution serves a compensatory purpose and must be tied to the victim's actual loss rather than the defendant's gain. *United States v. Zangari*, 677 F.3d 86, 91–94 (2d Cir. 2012). At the same time, the Second Circuit has held that the MVRA does not require mathematical precision and that a "reasonable approximation" grounded in a sound basis is sufficient. *United States v. Gushlak*, 728 F.3d 184, 195–96 (2d Cir. 2013).



AUSAs Rothman and Colson

July 24, 2026
Page 5

Emigrant's requested restitution amount is based on (a) the outstanding principal balance and accrued but unpaid interest and fees, less all recoveries, offsets, and credits received and (b) the price of Series A-12 Preferred shares purchased by CAI. This methodology provides a straightforward calculation of Emigrant's actual loss and a reliable basis for determining restitution under the MVRA.

Emigrant's actual loss as of June 30, 2026 equals:

**Outstanding Principal Balance:** $16,718,661.90
**Accrued and Unpaid Interest and Fees:** $6,820,207.35
**Purchase Price of Series A-12 Shares:** $3,000,000.00

 **Net Restitution Requested: $26,538,869.25**

This loss is directly attributable to Hunsicker's fraud and is supported by Emigrant's loan records, payment history, charge-off documentation, and internal loss calculations, certain of which are attached as Exhibits A-D (Exhibit A – Hunsicker Facility Invoice; Exhibit B – Loan Payment Records; Exhibit C – Hunsicker Principal Charge-Off History; Exhibit D – CaaStle Series A-12 Preferred Share Certificate)[1].

Please let us know if you have any questions. Thank you for your consideration.

Sincerely,

Jonathan E. Algor

---

[1] The records measure different items, including payment activity, internal charge-offs, and contractual obligations. Because only $2,510,877.02 of the $5,850,140 secured-creditor sale in December 2025 was applied to principal, the balances are not directly comparable.



# Victim Impact Statement No. 7



Gagnon Securities Partners Private Fund I LLC
c/o Gagnon Securities LLC



March 5, 2026

**Via Email:** <u>Alexandra.Rothman@usdoj.gov</u>

**Alexandra Rothman**

Assistant United States Attorney

Southern District of New York

One Saint Andrew's Plaza

New York, NY 10007

**Re: U.S. v. Christine Hunsicker, 25 Cr. 318 (JPO) - Victim impact statement and restitution**

Dear Ms. Rothman,

On behalf of **Gagnon Securities Partners Private Fund I LLC**, I submit the following information in connection with your request for a victim impact statement and restitution documentation in the above-referenced matter.

**Victim Impact Statement**

The losses suffered by Gagnon Securities Partners Private Fund I LLC represent not only a substantial financial impact but also a breach of trust in professional relationships that underpinned our investment decisions. We strive to exercise care and diligence in all transactions. The losses suffered by Gagnon Securities Partners Private Fund I LLC represent not only a

substantial financial impact but also a breach of trust in professional relationships that underpinned our investment decisions. We strive to exercise care and diligence in all transactions. The fraudulent conduct underlying this case has eroded confidence in representations that are fundamental to early-stage investing. Beyond monetary harm, this has required additional compliance, internal review, and legal expenses to uphold our reputation for integrity and accountability.

We respectfully request that the Court consider these impacts during sentencing and that restitution be ordered in full for verified investor losses, including those sustained by Gagnon Securities Partners Private Fund I LLC.

## Restitution Information

- **Full name of entity:** Gagnon Securities Partners Private Fund I LLC

- **Mailing address for restitution payments:**
  Gagnon Securities Partners Private Fund I LLC
  c/o Gagnon Securities LLC
  ███████████████████████
  ████████████

- **Total out-of-pocket financial loss:** $1,205,004.80

This amount reflects the following investments and related payments:

1. On **December 27, 2023**, Gagnon Securities Partners Private Fund I LLC invested **$700,004.80** in **CaaStle**, pursuant to the *Series A-12 Preferred Stock Purchase Agreement* and *Warrant to Purchase Shares of Common Stock*. A copy of the December 2023 brokerage statement showing the wire transfer to CaaStle is attached.

2. On **January 21, 2025**, the fund invested **$500,000** in **P180**, pursuant to the *Second Amended and Restated Stockholders' Agreement* and *Series A-1 Preferred Stock Purchase Agreement*. A copy of the January 2025 brokerage statement showing the wire transfer to P180 is attached.

3. On **April 15, 2025**, following an email from **Jean-Paul St Germain** to **Neil Gagnon**, General Partner of the fund, requesting a 1% contribution to support litigation against Ms. Hunsicker, the fund wired **$5,000** to P180. A copy of the email request and the April 2025 brokerage statement confirming this transfer are attached.

Collectively, these amounts constitute the total out-of-pocket loss of $1,205,004.80. All relevant agreements, emails, and account statements are enclosed as attachments to substantiate these losses.

Thank you for your attention and continued coordination on this matter.

Sincerely,

**Neil Gagnon**
General Partner and Senior Partner
Gagnon Securities Partners Private Fund I LLC
Gagnon Securities LLC

**Marianne D'Alessandro**
Partner and Chief Financial Officer
Gagnon Securities Partners Private Fund I LLC
Gagnon Securities LLC

**Maureen Drew**
Senior Partner
Gagnon Securities Partners Private Fund I LLC
Gagnon Securities LLC

# Victim Impact Statement No. 8

**General Global LLC**

May 9, 2026

**VIA EMAIL (Alexandra.Rothman@usdoj.gov)**

Alexandra Rothman, Esq.

Marguerite B. Colson, Esq.

Assistant United States Attorneys

United States Attorney's Office

Southern District of New York

The Jacob K. Javits Federal Building

26 Federal Plaza, 37th Floor

New York, New York 10278

**Re:  *United States v. Christine Hunsicker*, 25 Cr. 318 (JPO) — Victim Restitution Submission on Behalf of Trisul Capital — Trisul Series II LLC**

Dear Ms. Rothman and Ms. Colson:

This firm represents Trisul Capital — Trisul Series II LLC ("Trisul Series II"), an investment vehicle managed by Aemish Shah of GenGlobal Capital, in connection with the above-referenced matter. We write in response to your March 4, 2026 letter requesting victim impact statements and information for the Schedule of Victims to accompany the restitution order to be entered at sentencing on August 5, 2026.

Trisul Series II is a victim of the offense conduct admitted by the defendant in the Stipulation of Facts annexed to the plea agreement dated March 4, 2026. Trisul Series II invested an aggregate of $2,530,000 in Gwynnie Bee, Inc. (later rebranded as CaaStle, Inc.) over the course of multiple subscriptions. Those investments were procured by, and made in reliance on, the misrepresentations and fabricated financial documents that form the basis of Count Two of the Indictment to which Ms. Hunsicker has pled guilty.

In accordance with the information requested in your March 4, 2026 letter, we provide the following:

**(a)  Name of Victim**

Trisul Capital — Trisul Series II LLC

**(b)  Address for Restitution Payments**

[ADDRESS TO BE CONFIRMED — please insert mailing address designated by Trisul Series II for receipt of restitution payments]

**(c)  Precise Out-of-Pocket Loss**

$2,530,000 (aggregate principal invested in Gwynnie Bee/CaaStle, less any amounts recovered to date, as set forth in the Schedule of Investments accompanying this submission).

**(d)  Corroborating Documents**

Enclosed with this submission are the following documents corroborating the loss identified above:

1.  Schedule of Investments by Trisul Capital — Trisul Series II LLC in Gwynnie Bee, Inc. / CaaStle, Inc.

2.  Series A-9 Preferred Stock Purchase Agreement (Gwynnie Bee, Inc.), executed signature pages dated March 20, 2017.

3.  Tenth Amended and Restated Stockholders' Agreement (Instrument of Adherence executed by Trisul Capital LLC).

We respectfully reserve Trisul Series II's rights under 18 U.S.C. §§ 3663, 3663A, and 3664, including the right to supplement this submission with additional documentation and to participate in restitution proceedings, including any proceeding pursuant to 18 U.S.C. § 3664(d)(5) if final loss amounts are not ascertainable by the date of sentencing. We also reserve all rights under the Crime Victims' Rights Act, 18 U.S.C. § 3771.

Please do not hesitate to contact me with any questions, or if any additional information would assist your office in compiling the Schedule of Victims.


Respectfully submitted,

*Aemish Shah*
_____
Aemish Shah
Managing Member of General Global
Investment Manager for Trisul Capital — Trisul Series II LLC
Dated: May 9, 2026

*Enclosures*

**cc:**  Neil ODonnell, Legal Scale LLP (via email)

# Victim Impact Statement No. 9

**VICTIM IMPACT STATEMENT**

**Victim:** Business Manager
Genesis Capital Enterprise Inc
USAO Number: 2025R00056
Court Docket Number: 25-CR-00318

**United States v. Christine Hunsicker**
**Case No. 25-cr-318 (JPO)**
**Hon. J. Paul Oetken**

Your Honor:

My name is FU Mingxia. I am the director and sole owner of Genesis Capital Enterprise Inc (**Genesis**), a BVI company through which I invested in CaaStle.

**Genesis** invested a total of $10 million in CaaStle: $5 million in February 2020, $3 million in April 2020, and $2 million in February 2021. Each investment was made after discussions with Ms. Hunsicker and/ or Mr. Jaswinder Pal Singh, and in total reliance on the financial information and personal assurances they provided—all of which I now know were intentionally fabricated. Although the investments were made through **Genesis,** the $10 million represented my personal capital, built over decades of effort.

I respectfully ask the Court to consider my financial loss, and I request that the Court order full restitution to **Genesis.**

Respectfully,

FU Mingxia
Director and Sole Owner of Genesis Capital Enterprise Inc
March 20 2026

# Victim Impact Statement No. 10

| Date: | Mon, 13 Apr 2026 5:58:28 PM (UTC) |
|---|---|
| Sent: | Mon, 13 Apr 2026 5:57:59 PM (UTC) |
| Subject: | [EXTERNAL] FW: U.S. v. Christine Hunsicker, 25 Cr. 318 (JPO) - Victim impact statement and restitution |
| From: | Jeffrey A. Goldberger ███████████████████ |
| To: | Rothman, Alexandra (USANYS) <Alexandra.Rothman@usdoj.gov>; |
| CC: | Colson, Marguerite (USANYS) <Marguerite.Colson@usdoj.gov>; Alexa Wilkins ████████████████ |
| Attachments: | DOC122017-12202017165350.pdf |

Hi Alexie -

Thank you for the email and your work on this case.

This is our victim impact statement:

I, Jeffrey Goldberger invested $250,000 in Gwynnie Bee/Caastle's Series A-11 in December 2017 via my trust entitled, Jeffrey A. Goldberger 2012 Family Trust after I had a call with Christine Hunsicker and Jaswinder Singh ("JP") introducing me to the opportunity.

Over the years we never received updates from Christine and her team, as is generally standard when making an investment in a company, even after several requests.

My friend who introduced me to the opportunity, Elizabeth Cutler, would occasionally reach out to a board member, ███████████, to try to understand what was going on with the company regarding growth, cash flow etc. by December 2024, they were purporting to be close to $200 million in ebitda.

The "numbers" were not shared because Christine did not want to disclose numbers, as the company was doing so well she wanted the utmost privacy, was secretive about information on the company getting out.

I saw a screenshot of a Caastle 2022 Final Audit containing a schedule of stockholder equity.

I have attached my executed subscription documents showing the $250,000 investment made. The wire for this amount was processed on December 21, 2017.

Restitution payments can be made to

Jeffrey A. Goldberger 2012 Family Trust
c/o Jeffrey Goldberger
███████████████████

Thank you for your work in this matter.

Sincerely,

Jeffrey Goldberger


**Jeffrey A. Goldberger**
**Principal**
**Atlas Capital Group**
█████████████████

# Victim Impact Statement No. 11

**From:** Bushnell, Meredith
**To:** Defendre, Valeen (USANYS)
**Cc:** diane greene
**Subject:** [EXTERNAL] Investigative Case 318B-NY-4026171
**Date:** Thursday, April 30, 2026 8:09:09 PM

Dear Ms. Defendre,

Below please find the Victim Impact Statement of Diane Greene for the above referenced investigative case.  Please let me know if you have any questions or require additional information.

Best regards,

Meredith Bushnell

# VICTIM IMPACT STATEMENT

Victim: Diane Greene
USAO Number: 2025R00056
Court Docket Number: 25-CR-00318

Insert the impact of the crime here (or, if a separate victim impact form is attached, please use that form to describe the impact of the crime):

I, Diane B. Greene, was invited by Christine Hunsicker to invest in Gwynnie Bee, Inc. in May of 2015.  On or about June 5, 2015, I, as Trustee of the Greene/Rosenblum Family 2004 Trust, purchased 59,382.42 shares of Gwynnie Bee, Inc. Series A-8 Preferred Stock for $250,000.  Gwynnie Bee, Inc. changed its name to CaaStle in January 2018.

On or about June 20, 2025, CaaStle filed for Chapter 7 bankruptcy, due to Ms. Hunsicker's fraudulent conduct. As a result, my $250,000 investment has been rendered worthless.

The loss is significant to me, as the $250,000 I invested in Gwynnie Bee could have grown materially over the past eleven years had it been invested elsewhere.

This message may contain information that is confidential or legally privileged. If you are not the intended recipient, any disclosure, use, or dissemination of this communication is strictly prohibited. If you have received this communication in error, please reply to the sender at Jasper Ridge Partners immediately and then delete it. This communication constitutes neither an offer to sell nor a solicitation to purchase any investment product.

# Victim Impact Statement No. 12

Owen P. Honors



30 March 2026

Alexandra Rothman
U.S. Department of Justice
United States Attorney
Southern District of New York

Dear Alexie,

 Thank you for your letter of 4 March concerning Victim Impact information.  Here are some answers to your questions:

    a.   Owen P. Honors

    b.   ██████████████████████

    c.   $415,000 total loss.  Initial loss was the amount of my 401K ($365,000) which I turned into an IRA and bought Caastle stock in 2021.  The second loss was $50,000 when I was given an opportunity to buy shares at a highly discounted rate from an employee who needed the money.

    d.   Attached are several documents that detail the agreements and subsequent stock certificates.

    e.   This has been a devastating loss for me and especially my family.  My wife, her father and brother invested well over $30M in Caastle.  My father-in-law (███████) was a board member with JP Singh at Eight by Eight for many years and thought they were close friends.  Mr. Singh convinced him and his family to invest and never thought to mention that he was no longer a board member.

Very Respectfully,

Owen P Honors

# Victim Impact Statement No. 13

**U.S. v. Christine Hunsicker, 25 Cr. 318 (JPO) - Victim impact statement**

6/29/2026

Your Honor:

I respectfully submit this victim impact statement for the Court's consideration in connection with the sentencing of Christine Hunsicker.

I have known Ms. Hunsicker and followed Caastle since approximately 2016. Over the course of many years, I developed confidence in both her and the company. This confidence was not based solely on public information or marketing materials. I met with Ms. Hunsicker in person on multiple occasions, visited Caastle's offices (first in Long Island City and then in Penn Plaza), exchanged numerous emails and WhatsApp messages with her, and spoke with her many times by phone. These repeated personal interactions gave me every reason to believe that she was being truthful about the company's business, financial condition, and prospects.

In 2023, after years of following the company and relying on the trust that had been established through these direct interactions, I invested $20,000 in Caastle. Ms. Hunsicker was very excited to have me personally invest. I believed I was making a legitimate investment in a growing business. She explicitly stated that the company was in talks for a large growth fundraising, gaining new big-name customers, and was cash flow positive. Had I known the true financial condition of the company or that material information was being misrepresented, I would never have invested.

The financial loss itself is significant to me. While $20,000 may represent only a small fraction of the overall losses in this case, it represents years of savings and money that could have been used for my family's financial security, retirement, or other important life goals, such as a partial down payment on an apartment. Losing these funds has had a meaningful impact on my financial planning.

The emotional impact has been equally significant. What makes this fraud especially painful is that it was built on years of personal trust. Ms. Hunsicker was not simply the CEO of a company in which I invested. She communicated with me directly, met with me and my colleagues in person, welcomed investors into the company's offices, and cultivated confidence through ongoing personal relationships. Looking back, those interactions now feel fundamentally different. I find myself questioning whether the trust I placed in her over many years was intentionally exploited.

This experience has also changed the way I approach investing and professional relationships. It has made me more skeptical and less willing to trust entrepreneurs, even those who appear credible and accomplished. That loss of trust is difficult to measure but has had a lasting effect on me.

I recognize that no sentence can restore what has been lost. However, I respectfully ask the Court to consider not only the financial harm caused by this offense but also the years of trust that were cultivated and ultimately betrayed. This was not a single misleading statement or isolated transaction. The trust that led to my investment was built over many years through repeated personal interactions, making the betrayal especially profound.

Thank you for considering my statement.

Respectfully submitted,

Yale B Isaacs

# Victim Impact Statement

# No. 14

**GT** GreenbergTraurig

Benjamin G. Greenberg

██████████

June 7, 2026

Deanna M. Paige
U.S. Probation Officer
300 Quarropas St
White Plains, NY 10601

Re:     United States v. Christine Hunsicker
        25-CR-00318 (JPO)

Dear Ms. Paige:

We write on behalf of KSV CaaStle Holdings L.P. ("KSV-I") and KSV CaaStle Holdings II L.P. ("KSV-II," together with "KSV-I," "KSV"), statutory victims in the above referenced case. With respect to restitution, we are providing: (a) the full name of the entities that sustained out-of-pocket financial loss in connection with investments in CaaStle or P180; (b) an address to which restitution payments can be mailed; (c) the precise amount of any out-of-pocket financial loss; and (d) documents sufficient to corroborate the loss identified above.

As noted in public court filings, KSV was misled and then embroiled in the Defendant's fraud when she induced KSV to invest in CaaStle by, among other things, misrepresenting the financial condition of CaaStle. Hunsicker falsified financial records that overstated revenue by as much as 33-fold, misrepresented EBITDA as being close to positive nine-figures when CaaStle's EBITDA was actually in the negative nine-figures, and falsely claimed CaaStle had hundreds of millions of dollars in liquidity when, in reality, it had less than $1 million in cash. As a result of these material misrepresentations and omissions, as well as other unlawful conduct outlined in the Indictment and factual proffer in support of Ms. Hunsicker's guilty plea, KSV invested in CaaStle in exchange for shares that today are worthless. KSV did not invest in a risky new company—it was misled through false financials and doctored reports into believing CaaStle was a powerhouse for growth.

As noted above, the statutory victims are KSV-I and KSV-II. KSV-I sustained an out-of-pocket loss of $10,511,064.52 in connection with investments in CaaStle. KSV-II sustained an out-of-pocket loss of $36,864,763.77 in connection with investments in CaaStle. Both KSV-I and KSV-II have a principal address at 222 Lakeview Ave., Suite 800, West Palm Beach, FL 33401.

Via a separate email, we are providing documents showing KSV's transfers of funds to CaaStle.

Very truly yours,

*Benjamin G. Greenberg*

GREENBERG TRAURIG, P.A.
Benjamin G. Greenberg
Shareholder

2

**GT** GreenbergTraurig

Benjamin G. Greenberg
305.579-0850
Greenbergb@gtlaw.com

August 11, 2026

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
Brooklyn, NY 10007

Re:    *United States v. Christine Hunsicker*, 25-Cr-318 (JPO)
       Victim Impact Statement from KSV

Dear Judge Oetken:

We write on behalf of KSV, a statutory restitution victim in the above-referenced case. KSV previously provided financial information relevant to the determination of the appropriate restitution amount in this case. The purpose of this letter is to focus on the non-financial impact the Defendant's criminal conduct has had on victim KSV. Because analyzing non-economic impact is more qualitative than quantitative, we urge the Court to consider the full range of victim impact when sentencing Ms. Hunsicker. In an effort to hopefully assist the Court, we focus here on two specific and concrete issues that have affected KSV both during and after Ms. Hunsicker's brazen criminal conduct.

First, while KSV is the legal and statutory victim, KSV's investors were directly harmed by the Defendant's conduct. In cases where private funds are fraudulently induced to invest based on a defendant's scheme to defraud, there is sometimes an unfortunate tendency to view the victim as a vague corporate entity at the expense of focusing on the real individuals, families, and companies who lose money. But these are precisely the types of investors in KSV - families, individuals, and smaller institutional investors who have suffered materially as a result of the Defendant's fraud. These people as well as institutional investors have felt this economic impact and now face significant financial challenges because of Ms. Hunsicker. In other words, the fact that a pooled investment or private equity fund is the noticed victim for purposes of the Mandatory Victims Restitution Act does not mean that the consequences of the Defendant's fraud are any less severe.

Second, Hunsicker's conduct was particularly insidious because she continued to solicit additional investments from KSV by making false representations and fabricated materials and assurances to KSV right before CaaStle's fraud was uncovered. One example typifies the lengths Ms. Hunsicker went to both conceal and promote the fraud. On a video call in December 2024 between Hunsicker and KSV, Hunsicker walked KSV through CaaStle's business model and represented that all of CaaStle's lines of business (enterprise rental,

branded affiliates, and ecommerce optimization) were profitable. In this video pitch, Hunsicker represented that CaaStle's "balance sheet had a lot of cash on it, and very little of everything else . . . [CaaStle] is stockpiling cash. . . . [CaaStle] ha[s] several hundred million in the bank." These statements were consistent with prior representations Hunsicker had made to KSV in May 2024 before the initial investments. Unfortunately, unbeknownst to anyone at KSV, the statements in the video were completely false.

As a result of these material misrepresentations and omissions, as well as other unlawful conduct outlined in the Indictment and factual proffer in support of Ms. Hunsicker's guilty plea, KSV invested in CaaStle in exchange for shares that today are worthless. This directly impacts KSV's investors, not just a fund.

Respectfully submitted,

Sincerely,

GREENBERG TRAURIG, P.A.

/s/ *Benjamin G. Greenberg*
Benjamin G. Greenberg
Shareholder

CC:    Assistant United States Attorney Alexandra Rothman
       United States Probation Officer Deanna M. Paige

2

# Victim Impact Statement No. 15

# L LEEDS HOLDING LLC

█████████

## SHELTER ISLAND, NY 11964
### 917-536-5792

20 April 2026

District Judge Hon. J. Paul Oetken
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *United States v. Defendant(s) Christine Hunsicker*
   *Case Number 2025R00056 and Court Docket Number 25-CR-00318*

Your Honor,

My name is Theresa Kilb, and I am the manager of L Leeds Holding LLC, a family investment vehicle which was a victim in the matter involving Christine Hunsicker.

In early 2020, we made a $50,000 investment in Caastle. This decision was made after careful consideration and was influenced by Ms. Hunsicker's apparent credibility and her association with well-known leaders in the retail industry, with whom the Leeds family had longstanding relationships. These factors gave us confidence that we were participating in a legitimate and responsibly managed business.

We made this investment just three weeks before the COVID-19 shutdown, which led to a critical period, during which transparency and communication were essential. Instead, when we sought updates and clarity regarding the status of the company and our investment, Ms. Hunsicker repeatedly failed to respond to our inquiries. Our communications were met with silence. This lack of transparency and accountability left us without the basic information to which any investor is entitled.

While this investment did not represent a significant portion of our overall portfolio, that does not lessen the seriousness of what occurred. Any loss resulting from fraud is unacceptable. Beyond the financial impact, this experience represents a clear breach of trust and a failure of integrity.

As the manager of the Leeds family investments, I have a responsibility to act prudently and to rely on the honesty of those with whom we do business. That trust was violated.

I respectfully ask the Court to consider not only the financial loss, but the broader principle at stake: that fraudulent conduct, regardless of the size of the investment or the sophistication of the investor, undermines confidence in the financial system and must be taken seriously.  Thank you for your consideration.

Respectfully,

Theresa L Kilb
Authorized Manager
L Leeds Holding LLC (VIN '7761982')

# Victim Impact Statement No. 16

| | |
|---|---|
| **From:** | Eric Lee |
| **To:** | Rothman, Alexandra (USANYS) |
| **Cc:** | Colson, Marguerite (USANYS); Rothman, Alexandra (USANYS) |
| **Subject:** | [EXTERNAL] Re: U.S. v. Christine Hunsicker, 25 Cr. 318 (JPO) - Victim impact statement and restitution |
| **Date:** | Saturday, March 14, 2026 11:38:11 AM |
| **Attachments:** | U.S. v. Hunsicker Plea Agreement.pdf |

Dear Alexandra and Marguerite,

Thank you for your email.  Please find below my response to the inquiries regarding restitution.

## Victim Impact Statement:

I invested in Gwynnie Bee / CaaStle in three rounds.  The actions of Ms. Hunsicker and the failure of governance and fiduciary responsibility by Ms. Hunsicker, JP Singh, their Board, et al cost many people I know dearly in the loss of hard-earned savings.  This active and passive misbehavior continued for years as they continued to raise additional funds under fraudulent pretenses.  Multiple people at the company were involved in those actions including JP Singh who "marketed" the company further under to raise capital even after leaving a formal role at the company.  I would note that JP Singh did all of the marketing to fundraise for the company to me and many people I know even into the later years while the fraud was being perpetrated.


a)  My name: Eric J. Lee

b)  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  New York, NY.  10128.

c)  I have included a detailed accounting below for amounts lost.  $365,000.


d)  Please see "c)" immediately above.



Eric J. Lee
WCAS
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
New York, NY 10022



# Victim Impact Statement No. 17

**May 29, 2026**

# US DEPARTMENT OF JUSTICE

UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF NEW YORK
THE JACOB K. JAVITS FEDERAL BUILDING
26 FEDERAL PLAZA, 37TH FLOOR
NEW YORK, NY 10278

Subject: Submission of Victim Impact Statement and Restitution Information for Case <u>United States v. Christine Hunsicker, 25 Cr. 318 (JPO)</u>

Dear Office of the Court,

I am writing in response to your request for (1) victim impact statements for submission to the Court in connection with sentencing of Christine Hunsicker, the founder and former CEO of CaaStle, and (2) information necessary to compile a Schedule of Victims accompanying a restitution order.

**Victim Impact Statement**

My husband, Albert Livingston, and I were introduced to Ms. Hunsicker and CaaStle by one of my husband's co-workers. Ms. Hunsicker conducted an introductory zoom meeting on Thursday, August 12, 2021. Ms. Hunsicker presented CaaStle and its business model. The email confirming the meeting and the PowerPoint from that meeting is included with the supporting documentation. After the meeting, I decided to invest $100,006.00 in CaaStle which purchased 16,130 shares. The money was submitted via wire transfer on September 13, 2021. The confirmation of wire transfer as well as the wire transfer directions are provided as supporting documentation. From then until the notification of Ms. Hunsicker's wrongdoing we received very little communication. In fact, it was difficult to receive the counter signed shareholder agreement and the stock certificate. We did not in fact receive those until repeated attempts from both myself and my husband on May 4, 2022. Those emails are provided as supporting documentation.

My husband and I have been fortunate to have money to invest in entrepreneurial people and their companies. We both believe in the power of entrepreneurship and great ideas. We feel that it is these great ideas that have made the United States of America the country it is today. We do understand the risk in this type of investment that the person/company may fail and we would lose our investment. It is one thing to invest the money and lose It because the company fails but it is a whole different type of loss when the investment money is taken fraudulently. Ms. Hunsicker took advantage of our good will and stole the money from us.

In addition, on 9/26/2024 at 1:30 my husband spoke to Ms. Hunsicker for an update on CaaStle and the near term future of the company.  She told him the expected business plan was to sell the company or bring in the next round of easy to cash out initial investors in early Q2 2025 at a valuation which would yield an 8X return of the equity we had invested.

This has been a very hard year for us because my husband lost his brother, Peter Livingston, and Peter's wife and two daughters in the American Airlines 5342 crash in January 2025 as well as my dad passed away unexpectedly in March 2025. Not long after my dad passed, we were notified that Ms. Hunsicker had committed fraud and that most likely our investment was lost. We were angry at the world, and this was one more thing to make the pain and suffering from our family losses feel even worse.

This situation has made us now no longer comfortable in supporting entrepreneurs. This causes us even more frustration because we have kids and we want our kids to have a future rich with choices in employment. One of those choices could have been CaaStle if only Ms. Hunsicker had done what she had promised in her initial presentation to us. So, we lost not only the $100,006 but we also lost trust in people. In addition, had we invested the money in a Dow Jones industrial index fund on Sep 13, 2021, we lost the 40% rise in value to present day.

## Restitution Information

In connection with my financial losses related to investments in CaaStle or P180, I respectfully provide the following information:

- **Full Name of Victim (Individual/Entity):** Melinda Holly Gadd Livingston
- **Mailing Address for Restitution Payments:** ███████████████████
  █████████
- **Total Out-of-Pocket Financial Loss:** $100,006.
- **Supporting Documentation:**
    - CaaStle Fourteenth A&R Stockholder Agreement
    - CaaStle Series A-12 Stock Purchase Agreement
    - CaaStle Shareholder letter 3.29.25
    - CaaStle Shareholder letter 4.7.25
    - CaaStle Shareholder Update 4.22.25
    - Signed Shareholder Agreement
    - Email correspondence documenting introductory meeting, purchase agreement and request for counter signed shareholder agreement and stock certificate
    - Share certificate for Melinda Livingston

2

- Original Wire Instructions from CaaStle
- A copy of the wire transfer confirmation documentation from SunTrust/Truist bank

These supporting materials have not previously been submitted.

I understand that identifying information included in the Schedule of Victims will be submitted to the Court under seal and will not appear in the publicly filed restitution order.

Please let me know if any additional information or documentation is required to support this submission. Thank you for your attention to this matter.


SINCERELY,

MELINDA LIVINGSTON

# Victim Impact Statement No. 18

**From:**

**To:** Defendre, Valeen (USANYS)

**Subject:** [EXTERNAL] FW: Caastle

**Date:** Monday, March 23, 2026 3:18:35 PM

Victim:  Gary Morgan

USAO  2025R00056

Court Docket#  25-CR-00318

Victim Identification # 7762142

My name is Gary Morgan, and I am submitting an "Impact Statement" for Caastle filing bankruptcy and how Ms. Hunsucker's dishonesty has affected me and my family. I can provide emails showing that one of the main reasons I invested in Caastle was because the former President of Stanford University, Mr. Hennessy, as I was told/emailed, was himself an investor and more importantly on the Caastle Board. My belief was there would be good, intelligent, oversight with him on the Board. I later found out that Mr. Hennessy had resigned from the Board and the company did not notify the shareholders. What I want to know is how members of the Board let all this fraud happen? In some respect they should be held accountable to the shareholders. Not as much as Ms. Hunsucker but to some level. Their job is oversight. Had I known Mr. Hennessy was no longer on the Board I would have most certainly not invested the additional $175,000.

The impact this has had on my family has been traumatic, mostly on me since I was the one who decided to invest when I was introduced to Ms. Hunsucker by JP Singh an owner and a Board member. I am not a wealthy man, this loss has caused me and more importantly, my family, immeasurable financial harm. These funds were to provide for our grandchildren's college education.  What impacts me even more was the blatant fraud Ms. Hunsucker committed when she wanted me to invest another $175,000 because another investor needed "quick" money to settle what she said was some IRS obligations. I asked her at the time why she or other Board members would not buy if it was such a great deal; she stated Board members could not because it would have been considered "insider" trading. She convinced me at the time the company was doing really well and that management was working on a program to allow existing investors to start selling their shares at a premium. She then started telling me about the audit where she stated that Caastel was going to make 100M pretax and that I should "jump all over this".

In addition, Ms. Hunsucker said the software products they were developing and close to finishing, were going to "revolutionize" the clothing industry and management was still on track to sell Caastle to TJ Max.

The initial $500,000 was difficult for me and my family to lose. The audacity of her blatant lies and ultimate deceit concerning the additional $175,000 is difficult to understand.

I am especially interested where the extra money went from me and the other investors who were convinced to buy more stock. I would like to know that it did not go into Ms. Hunsuckers (or other

investors/close friend or other Board members pockets)  through something like a Bitcoin where it is nearly impossible to track and when she is done serving her time she comes out with a large amount of money waiting for her.   She should serve a lot of time and not be released early for "good behavior" as her actions have affected all the investors, for life.

Sincerely
Gary Morgan

# Victim Impact Statement No. 19

| | |
|---|---|
| **Date:** | Thu, 5 Mar 2026 8:01:32 PM (UTC) |
| **Sent:** | Thu, 5 Mar 2026 8:01:16 PM (UTC) |
| **Subject:** | [EXTERNAL] Christine Hunsicker/ response to press release request for views of defrauded investors |
| **From:** | Richard Morrissey ■■■■■■■■■ |
| **To:** | Defendre, Valeen (USANYS) <Valeen.Defendre@usdoj.gov >; |

I lost $500,000 to her fraudulent scheme.

As part of her sentencing she should acknowledge the impact of her fraud on other start ups and describe in detail how she mislead her board. Her board did not do its job  and that should be made clear so future investors could learn how to protect themselves from bad board practices which included a cynical misuse by the board  of Chapter 7 to protect themselves from liability
Sent from my iPad

# Victim Impact Statement No. 20

| | |
|---|---|
| **From:** | Elizabeth Mullin |
| **To:** | Rothman, Alexandra (USANYS) |
| **Subject:** | [EXTERNAL] Mullin& CAASTLE Inc |
| **Date:** | Monday, July 27, 2026 3:47:34 PM |

Thank you for taking my call a few weeks back regarding our investment with CAASTLE Inc and CEO Christine Hunsicker.

I am writing to summarize our investment with CAASTLE INC. In Augusta 2024, we were approached by Monica Graham regarding what she described as a unique investment. ████████████, her late brother, ████████, and ████████████ were long term investors with Gwynnie Bee, predecessor to Castle. They also are long time friends of ours.
████████████ also had a long-standing trusting relationship with founder and CEO of CAASTLE. ██████'s brother ████ had just passed away and we were at a dinner in his behalf. ████████ explained if ████ had still been alive this opportunity would be offered to he and ████████████ because of their long term relationship with Hunsicker and loyalty to the company. Since ████ had passed, she wanted to offer us this rare opportunity to invest in this company she had much faith with, along with ██████ She represented that a recent Investor needed to immediately liquidate and we could purchase shares at $1.00 and there was $1,000,000.00 available to ████████████ and us. Because of the short time window we agreed we to $250,000.00 which we wired August 29th, 2024.
Given ████████████ "s history with the company and relationship with Hunsicker, we relied on him as our primary point of control and believed he could obtain the necessary documentations. After we wired the funds weeks had passed without receiving our stock certificates, nor did ████████ ████████ repeatedly called Hunsicker and her office to request the certificates and was told they would be forthcoming. BUT did not arrive for an extended period of time. When he/we were finally issued the certificate it stated $6.20 a share not $1.00 per share that was represented to us. ██████ immediately questioned the discrepancy and continued to seek an explanation from Hunsicker but never received answers.
Shorty after we learned through public filings that federal criminal charges were being brought against Hunsicker by the U.S.. attorney office for the Southern District of New York in connections with fraud involving CAASTLE Inc.
Based on the public court filings and other information we have reviewed, we believe our investment occurred during the period of the alleged fraud was taking place.
I will provide what I have which is proof of wired transaction and the false stock certificate. Mr. ██████ would have all the correspondence with Hunsicker and office. We are happy to assist in any way.

Thank you,
Elizabeth and Christopher Mullin

████████████

# Victim Impact Statement No. 21

Date:      Thu, 5 Mar 2026 3:29:34 PM (UTC)

Sent:      Thu, 5 Mar 2026 3:29:07 PM (UTC)

Subject:   [EXTERNAL] CaaStle

From:      Adam Okun ██████████████████████████

To:        Defendre, Valeen (USANYS) <Valeen.Defendre@usdoj.gov>;

Hi Valeen, I lost $600k on an investment into CaaStle through a SPV run by a VC firm called ████████ ██████████ I previously connected with the SEC and advised how intertwined ████ and Christine were with one another and my suspicion he was involved; █████████████████████████████ on his site and he told me she spoke with him multiples times a week. He singlehandedly raised more for her than any other source and has been defending her since the day she's been arrested. I previously shared docs with the SEC but not sure where that went. At the least, he seems to have been operating as an unlicensed broker dealer in organizing secondary transactions on her behalf. Please let me know if you want me to forward the docs I previously sent to the SEC

This email is in response to this posting yesterday:
https://www.justice.gov/usao-sdny/pr/caastle-founder-pleads-guilty-300-million-fraud-scheme

Adam

**Adam Okun, ASA, MAAA**

Regional Practice Leader, Employee Benefits



1140 Ave of the Americas, 8th Floor, New York, NY 10036

epicbrokers.com

******************************************************************** This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version. ***********************************************************************