# EXHIBIT E

WILLIAM ANDREW STERLING MD                    TEL: 347–469–0197
FORENSIC PSYCHIATRIST                         FAX: 347–467–5505

## PSYCHIATRIC EXPERT REPORT

**REGARDING:** United States of America v. Christine Hunsicker
**DATE OF REPORT:** 8/11/2026

### PURPOSE OF EVALUATION:

The purpose of this evaluation is to offer opinions on the methodology employed and the opinions offered in neuropsychologist Dr. Sarah G. Schaffer's Forensic Neuropsychological Report, submitted on 7/20/2026. Dr. Schaffer's report was prepared for the sentencing phase in the matter of United States of America v. Christine Hunsicker. I was retained in this matter by the United States Attorney's Office of the Southern District of New York.

### OPINIONS:

To a reasonable degree of medical certainty, I hold the following opinions regarding the methodology employed in Dr. Schaffer's forensic report:

1. Dr. Schaffer's report does not adequately support the nexus between Ms. Hunsicker's reported Post-Concussion Syndrome (PCS) and her criminal behavior. The report does not establish a clear behavioral link between Ms. Hunsicker's PCS and the 6-year period over which she committed securities fraud. The report does not include any independent neuropsychological testing performed by Dr. Schaffer to ascertain Ms. Hunsicker's neurological impairment.
2. The report does not appropriately explore Ms. Hunsicker's other psychiatric history, particularly her histories of Bipolar Disorder and Borderline Personality Disorder with Narcissistic Personality Disorder traits. The report's formulation of Ms. Hunsicker's mental state overlooks critical aspects of her medication use at the time she committed securities fraud as well as aspects of Dr. Jennifer Kraker's formulation of Ms. Hunsicker that are relevant to the criminological assessment.
3. The report does not adequately seek corroboration of Ms. Hunsicker's self-report of her history and her symptoms.
4. The report cites unsupported genomic data in formulating its opinion on criminal risk.
5. The report does not utilize a formal risk assessment, either through a specific actuarial tool or through a structured judgment. The report does not account for necessary psychiatric data, and the resulting conclusions about Ms. Hunsicker's likelihood of recidivism and monitoring needs are unsupported.

Due to the methodological errors listed above, it is my opinion that the report does not arrive at reliable opinions with regard to the psychiatric factors that led to Ms. Hunsicker's criminal conduct, her risk of recurrent criminal behavior, or recommended monitoring conditions. I discuss these opinions in more detail in the "Discussion of Dr. Schaffer's Evaluation" section of this report.

Hunsicker, Christine – Rebuttal Report                                                                2

**SOURCES OF INFORMATION:**

*Documents Reviewed*
1.  Dr. Sarah G. Schaffer – Forensic Neuropsychological Report (7/20/2026) [A1-A22]
2.  United States of America v. Christine Hunsicker – Sealed Indictment (7/17/2025)
3.  United States of America v. Christine Hunsicker – Arraignment Transcript (7/18/2025)
4.  United States of America v. Christine Hunsicker – Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment (3/4/2026)

*Medical Records*
5.  New York University Tisch Hospital (including Emergency Room visits, Physical Medicine and Rehabilitation visits, Rusk Rehabilitation Center visits) (6/25/2010-7/27/2023) [A283-A499]
6.  Hyperbaric Medical Solutions (2/25/2019-7/1/2019) [A500-A586]
7.  Physicians Pain Treatment Associates, P.C. (8/24/2018-2/28/2019) [A587-A621]
8.  ImPACT Clinical Report (3/5/2019) [A622-A627]
9.  Brain Resource Center Clinical Assessment 11012274/EEG Raw Data (1/29/2019) [A628-A731]
10. Weill Cornell Medicine (including Neurology) (6/22/2018-12/14/2020) [A740-A751]
11. Dr. Jennifer Kraker medication history (12/17/2025) [A754-A761]
12. Email correspondence between Dr. Jennifer Kraker, Christine Hunsicker, and Ms. Hunsicker's counsel (4/3/2026-4/22/2026) [A762-A765]

The opinions offered in this report reflect my appraisal of the available medical and legal records in this case, Dr. Sarah G. Schaffer's methodology in her evaluation of Ms. Hunsicker, and the conclusions Dr. Schaffer offers in her 7/20/2026 report. The medical records I reviewed were the same medical records made available to Dr. Schaffer, with the exception of 2/12/2026 pharmacogenomic testing, which was not available for my review. I have not evaluated Christine Hunsicker and do not offer opinions about Ms. Hunsicker based on any direct evaluation of her.

**CASE SYNOPSIS:**

On 7/18/2025, Christine Hunsicker was arrested on 6 charges in an indictment: wire fraud, wire fraud in the purchase and sale of CaaStle securities, fraud in the purchase and sale of P180 securities, false statements to a financial institution, engaging in a money transaction in property derived from specific unlawful activity, and aggravated identity theft. The indictment alleges that Ms. Hunsicker defrauded investors in the clothing technology companies CaaStle Inc. and P180, which she founded and served as Chief Executive Officer (CEO), of nearly $300 million. The 7/17/2025 indictment further alleges that from February 2019 to March 2025, Ms. Hunsicker provided investors with falsified bank and audit documents that inflated CaaStle's finances and profits; used falsified financial information by digitally altering bank account images to solicit investment; furnished multiple falsified audit statements to investors; falsified the signature of a CaaStle Board director when seeking investment; and submitted falsified financial information to obtain a $20 million loan. It is further alleged that, in 2024, Ms. Hunsicker created a second business called P180, which collected additional investment, and then used it to fund CaaStle. The indictment estimates that Ms. Hunsicker raised approximately $30 million through this arrangement. The indictment states that an investor reported Ms. Hunsicker's activity to the CaaStle Board in December 2024, and the Board removed Ms. Hunsicker from her position as

Chairperson and forbade her from soliciting further investment in CaaStle. The indictment alleges, however, that Ms. Hunsicker continued to sell CaaStle shares in January and February 2025. Ms. Hunsicker resigned from CaaStle and P180 after the Board disclosed to investors that Ms. Hunsicker had falsified audits and financial statements. CaaStle ultimately filed for Chapter 7 bankruptcy on 6/20/2025. The indictment alleges that at various points in 2023 and 2024, Ms. Hunsicker searched for phrases such as "fraud," "created an audit firm fake," "faking an audit," and "bank fraud vs. wire fraud severity" in connection with the other fraudulent activity.

On 3/4/2026, Ms. Hunsicker pleaded guilty to Securities Fraud in connection with the alleged CaaStle and P180 scheme. She was ordered to forfeit the proceeds from her involvement in CaaStle and P180, nearly $300 million.

**SYNOPSIS OF DR. SCHAFFER'S REPORT:**

Neuropsychologist Sarah G. Schaffer, PhD, submitted a Forensic Neuropsychological Report on 7/20/2026, the purpose of which was to "provide the Court with a comprehensive understanding of the psychological, neurological, and developmental factors that contributed to Ms. Hunsicker's criminal conduct, as well as to offer an opinion regarding the likelihood of recurrence and to make recommendations for conditions of supervision." She evaluated Ms. Hunsicker on 3/26/2026, 4/17/2026, and 4/20/2026. Dr. Schaffer reviewed available medical records from Ms. Hunsicker's treatment related to a 12/10/2017 head injury and resulting post-concussive symptoms, as well as a pharmacogenomic report from 2/12/2026. Dr. Schaffer also reviewed a statement from Ms. Hunsicker's psychiatrist but did not receive treatment records. Dr. Schaffer did not conduct a neuropsychological evaluation of Ms. Hunsicker because Ms. Hunsicker reported that her cognition was at baseline following recovery from her 2017 injury.

Based on the above data, Dr. Schaffer's report offers the following opinions:

1. "Ms. Hunsicker's criminal conduct occurred in the context of a 'perfect storm' of converging factors, each of which is independently documented and clinically significant."
    a. These factors include Ms. Hunsicker's prior diagnoses of Bipolar Disorder, Borderline Personality Disorder, Complex Post-Traumatic Stress Disorder (PTSD), Alcohol Addiction, Opioid Addiction, Gambling Addiction, Nicotine Addiction, and an eating disorder.
    b. The opinion also cites Ms. Hunsicker's pattern of cumulative brain injury (from the 12/10/2017 injury as well as 3 prior events), "Genomic vulnerability to reward-seeking behavior," and "Situational and professional pressures" Ms. Hunsicker encountered in her role as the CEO of CaaStle and P180.
2. "The concussion and its sequelae played a significant and causally relevant role in Ms. Hunsicker's criminal conduct."
3. "Ms. Hunsicker's current level of insight, remorse, and engagement in recovery is genuine and substantial[1]."
4. "The likelihood of recurrence is low, provided that appropriate safeguards are maintained."

---

[1] Because I have not evaluated Christine Hunsicker, I cannot offer an opinion on this claim from Dr. Schaffer's report. However, this conclusion is based on Ms. Hunsicker's self-report, a methodological issue I have discussed regarding other conclusions in the evaluation.

**DISCUSSION OF DR. SCHAFFER'S EVALUATION:**

Dr. Schaffer's evaluation of Ms. Hunsicker relies heavily on Ms. Hunsicker's own report of her symptoms and offers little description of how Ms. Hunsicker committed financial fraud. The report does not adequately support a nexus between Ms. Hunsicker's reported Post-Concussion Syndrome (PCS) and her criminal behavior. The report does not comprehensively explore Ms. Hunsicker's other psychiatric illnesses, Bipolar Disorder and Borderline Personality Disorder, to explain her mental state as it pertained to her crime. The report uses genomic data of minimal relevance in formulating Ms. Hunsicker's mental state. The report does not consider sufficient data to offer a reliable risk assessment or a set of management recommendations for Ms. Hunsicker. I discuss specific methodological issues with the report in the following sections.

*Evaluation of Post-Concussion Syndrome and Criminality*

A central claim of Dr. Schaffer's report is that Ms. Hunsicker's Post-Concussion Syndrome was a major precipitant of her crime. The report states, "Without the 2017 concussion, there is no evidence to suggest that Ms. Hunsicker would have engaged in securities fraud" [A19]. The report cites treatment records from 2018-2020 in which Ms. Hunsicker sought care for headaches, lethargy, depressed mood, and difficulty concentrating (sometimes termed "brain fog") related to a 12/10/2017 incident in which she reported to clinicians that a 30-pound mirror had struck her head [A16]. These records also document a 5/9/2018 incident in which Ms. Hunsicker dropped a cell phone on her head [A361]. The injuries reportedly occurred on the left parietal area of Ms. Hunsicker's head, though computed tomography (CT) brain imaging on 2/15/2018 did not reveal any specific lesions [A441]. Ms. Hunsicker sought emergency room care for headaches, ophthalmologic care, physical therapy, and hyperbaric oxygen therapy (HBOT) for these symptoms, and she reported they resolved by 7/1/2019, according to the final note from her hyperbaric oxygen therapist [A568, A586]. The report states that Ms. Hunsicker's PCS "compromised the executive functions that she had been relying on to compensate for her underlying psychological vulnerabilities throughout her adult life," and created the circumstances in which she engaged in securities fraud [A19].

This claim of impairment is confusing on its face, as the described syndrome – cognitive slowing, impaired concentration, reduced executive functioning, and an impaired ability to execute goal-directed behavior – contradicts the mental skills required to commit financial fraud over 6 years. In committing this act, Ms. Hunsicker would have required intact attention and concentration, organizational ability, goal-maintenance ability over several years, social cognition about how and when to deploy fraudulent data, discrepancy monitoring when speaking to investors, deception, and strong inhibitory control to maintain falsified stories about CaaStle's finances. The report posits no mechanism or pathway by which Ms. Hunsicker became capable of this crime as a result of her reduced cognitive ability. Moreover, the report offers no description from Ms. Hunsicker of when or how she committed the fraud to begin with.

Temporally, the available medical records show Ms. Hunsicker's PCS escalating in 2018 and subsiding by July 2019. On 5/10/2019, Ms. Hunsicker told her HBOT clinician that her "memory has returned 95% and her brain fog has significantly lifted" [A568]. This timeline indicates only a few months of overlap between Ms. Hunsicker's acute PCS symptoms and her fraudulent behavior, and suggests that the deficits she experienced were transient and resolved with treatment. The report features no review of contemporaneous documentation indicating

cognitive impairment during the period of Ms. Hunsicker's criminal behavior. As such, the report does not establish a clear temporal connection between deficits and behavior.

The appropriate methodology to establish a connection between Ms. Hunsicker's reported PCS-related cognitive impairment and her criminal activity would be to conduct a detailed behavioral analysis of the criminal acts with Ms. Hunsicker to determine whether and how her judgment and thinking were impaired, and to report those findings. The report must tie Ms. Hunsicker's symptoms to the facts of the case. Given Ms. Hunsicker's claim of PCS-related cognitive impairment, contemporary neuropsychological testing is necessary to assess for lasting impairment from the concussion, which, if present, would need to be considered a meaningful neuropsychological impairment. The report relies on Ms. Hunsicker's statement that her cognitive symptoms had resolved without verifying that claim. Validity testing to assess for malingered symptoms is also useful in this context. Dr. Schaffer's report contains no such analyses and, in my opinion, does not provide adequate support for the opinion that Ms. Hunsicker's PCS causally contributed to her criminal behavior.

*Examination of Complete Mental Health History and Complete Review of Records*

Dr. Schaffer's report does not include a comprehensive review of Ms. Hunsicker's psychiatric history. The report does not describe the symptoms of Ms. Hunsicker's Bipolar Disorder or the circumstances surrounding her diagnosis. The report does not describe the symptoms of Ms. Hunsicker's Borderline Personality Disorder or the circumstances surrounding that diagnosis. The report provides more detail on Ms. Hunsicker's history of trauma as it relates to her Complex PTSD diagnosis, as well as her prior alcohol and opioid abuse. The report does not provide clear detail on when Ms. Hunsicker was diagnosed with a Gambling Addiction, though it is inferred that the diagnosis arose in the context of Ms. Hunsicker's arrest and conviction for securities fraud in this criminal case. The report offers no review of Ms. Hunsicker's 15 years of treatment records with psychiatrist Jennifer Kraker, MD, which were not made available for Dr. Schaffer's evaluation aside from a prescription history.

As a result, the report fails to investigate several aspects of Ms. Hunsicker's mental health that are relevant to understanding Ms. Hunsicker's criminal conduct:

- Bipolar Disorder – In a 4/22/2026 email to Ms. Hunsicker's counsel, Dr. Kraker wrote that Ms. Hunsicker exhibited hypomanic symptoms during fluoxetine (Prozac, an antidepressant) monotherapy, leading to a diagnosis of Bipolar Disorder Not Otherwise Specified [A765]. Dr. Kraker's email does not specify when this diagnosis was made, and the report does not provide that information. Disinhibition and increased risk-taking are common hypomanic symptoms and should be screened for in an evaluation of an individual who engaged in unexpected criminal conduct. Moreover, review of Ms. Hunsicker's prescription records from 2011-2025 indicates a period of fluoxetine monotherapy in the first 6 months of 2019, coinciding with the onset of Ms. Hunsicker's criminal behavior at CaaStle [A755-A761]. The connection among these aspects of Ms. Hunsicker's Bipolar Disorder, medication treatment, and behavior is not explored in Dr. Schaffer's report.
- Borderline Personality Disorder – In the same 4/22/2026 email from Dr. Kraker to Ms. Hunsicker's counsel, Dr. Kraker clarifies that she has diagnosed Ms. Hunsicker with "Borderline Personality Disorder, with NPD traits" [A765]. "NPD" commonly refers to

Narcissistic Personality Disorder, another Cluster B personality disorder defined by the following symptoms: a grandiose sense of self-importance; preoccupation with fantasies of success, beauty, or power; a belief in being understood only by high-status people or institutions; a need for excessive admiration; a sense of entitlement; interpersonal exploitation; a lack of empathy; envy of others; and arrogant, haughty attitudes. This additional diagnosis of Narcissistic Personality Disorder traits is not mentioned in Dr. Schaffer's report and is not discussed in any differential diagnosis or in alternative explanations for Ms. Hunsicker's presentation. In a forensic assessment, narcissistic traits – particularly patterns of grandiosity, entitlement, and lack of empathy – bear directly on criminal behavior and are highly relevant to explore. The connection between these qualities of Ms. Hunsicker's personality and her criminal behavior is not explored in depth in Dr. Schaffer's report.

It is methodologically important that, to the best of their ability, an evaluator review their evaluee's full treatment history and discuss the full diagnostic formulation when conducting a criminological assessment to offer an opinion on how psychiatric factors contributed to behavior. It is a significant limitation if an evaluator cannot review treatment records from an individual's psychiatrist or obtain collateral information by speaking directly with that psychiatrist. The effect this limitation has on a report's conclusions should be addressed. By failing to investigate the pattern and associated symptoms of Ms. Hunsicker's Bipolar Disorder, the patterns in her prescriptions at the time of Ms. Hunsicker's criminal behavior, and the effect of Ms. Hunsicker's Narcissistic Personality Disorder traits on her criminal behavior, Dr. Schaffer's report overlooks critical information in its analysis. The lack of review of Dr. Kraker's treatment records likely contributed to this issue.

*Reliance on Ms. Hunsicker's Self-Report*

Citing Ms. Hunsicker's history of childhood trauma, Dr. Schaffer's report characterizes her as having "a relationship with truth-telling that was fundamentally distorted" and suggests that Ms. Hunsicker will be dishonest to mitigate perceived threats of punishment [A7]. Ms. Hunsicker's criminal conviction for securities fraud substantiates that she is capable of significant dishonesty, and her reported clinical histories of Borderline and Narcissistic Personality Disorder symptoms provide a clinical basis for this observation. Dr. Schaffer's report relies heavily on Ms. Hunsicker's report for her descriptions of her symptoms, her remote and recent history, and a limited discussion of her criminal behavior. While the report uses some medical records from 2018-2019 to corroborate Ms. Hunsicker's descriptions of her PCS symptoms at that time, it does not include any statements from collateral sources familiar with Ms. Hunsicker to verify her account of her life. The report includes several notable statements by Ms. Hunsicker that warrant verification. These statements include:

- When discussing Ms. Hunsicker's reported history of a severe allergic reaction to naproxen in college, the report states, "She reportedly flatlined and required two adrenaline injections, but she still played in the Syracuse game the following day, against medical advice, and her team won." [A5].
- When discussing Ms. Hunsicker's fatigue during her acute PCS, "she was awake only four to five hours per day, was unable to engage in complex thought, and has someone following her around taking notes because she could not retain information" [A14].

- When describing Ms. Hunsicker's memory issues following the acute phase of PCS, the report states, "Ms. Hunsicker described her cognitive state during this period in terms that are consistent with the objective data. She reported remembering only fragments of 2020, 'zero of 2021,' and 'nothing of 2022 (maybe 1-2 days),' with memory beginning to return in 2023" [A13].

If an evaluee's self-report is known to be unreliable, as Dr. Schaffer observed, it is methodologically necessary to seek corroborating evidence to verify what they say. Each of the statements by Ms. Hunsicker listed above is unusual enough to warrant scrutiny. Ms. Hunsicker's report of "flatlining," a term that commonly refers to cardiac arrest, and of requiring adrenaline for resuscitation, yet playing in a field hockey game the next day, is difficult to reconcile given the monitoring requirements an individual who had experienced cardiac arrest would require. The report indicates no attempt to check this claim. Ms. Hunsicker's report of being awake only 4-5 hours a day is difficult to reconcile with the demands of her role as the CEO of CaaStle and could be verified by evaluating her professional calendar from that period or by speaking to someone who had observed her. Ms. Hunsicker's statement that she cannot remember anything from 2020-2022 may be unverifiable, but anterograde amnesia from a brain injury in discrete blocks several years after the injury occurred is rare. Further, the report's statement that Ms. Hunsicker's amnesia is "consistent with the objective data" is unsupported, as no medical records related to Ms. Hunsicker's PCS from 2021-2022 were reviewed. The report documents no attempts to verify these statements, though at least 2 of the 3 were verifiable claims. There is accordingly no basis to conclude that Ms. Hunsicker's subjective complaints of her impairment at the time of her criminal activity were subjected to any greater scrutiny.

*Reliance on Genomic Data*

Dr. Schaffer's report cites findings from a 2/12/2026 pharmacogenomic study ordered by Dr. Kraker as providing "independent biological evidence" supporting behavioral findings about Ms. Hunsicker. The data cited are 4 genetic polymorphisms that indicate elevated risk for gambling, risk-taking behavior, impulsivity, and sensitivity to drugs and alcohol, as well as reduced conversion of dopamine to norepinephrine and reduced levels of brain-derived neurotrophic factor. Genomic data like these are not commonly cited in forensic evaluation and have no support in the forensic literature. I have not reviewed this testing to comment on its accuracy; my opinion concerns the absence of any basis to use these data to form an opinion on criminal risk. Moreover, these genomic findings are of minimal utility compared to actual behavioral data about Ms. Hunsicker.

*Formal Risk Assessment*

Although Dr. Schaffer's report was intended to offer an opinion on the risk of Ms. Hunsicker's criminal behavior recurring and to make recommendations for conditions of supervision, it does not include a structured risk assessment in its determination. In my opinion, the use of validated risk assessment tools is preferable because they rely on empirically derived risk factors and help avoid an evaluator's idiosyncratic weighing or biasing of clinical data. They also provide transparency into how an evaluator arrived at their opinion of risk. There is no specific risk assessment tool validated for assessing an individual's risk of committing financial crime, but a structured approach to risk assessment, such as that employed in the Historical-Clinical-Risk Management-20, Version 3 (HCR-20v3), an instrument designed for violence risk, offers useful

professional judgment methodology for collecting the necessary data and applying transparent reasoning to determine an individual's risk of recidivism.

Due to the methodological issues raised above, Dr. Schaffer's report leaves numerous risk factors for Ms. Hunsicker underexplored. These include her history of Bipolar Disorder and the associated risk of disinhibited or risk-taking behavior; her history of Borderline Personality Disorder and Narcissistic Personality Disorder traits, and how those personality pathologies may have influenced her criminality; and her engagement with her psychiatrist, which Dr. Schaffer's report indicates is strained in the context of Ms. Hunsicker's current financial stress. These factors have a direct bearing on Ms. Hunsicker's risk of criminal recidivism. While the report emphasized the contribution of PCS to Ms. Hunsicker's presentation, it is impossible to determine the weight to assign that factor when so much of Ms. Hunsicker's mental life remains unexplored. Because of the lack of a complete data review, I cannot assess whether the report's treatment and monitoring recommendations are appropriate for Ms. Hunsicker.

I reserve the right to change my opinion if new information should become available regarding this matter.

Respectfully submitted,

*William Andrew Sterling MD*
*Board Certified in Psychiatry and Forensic Psychiatry*