# Victim Impact Statement No. 31

**U.S. Department of Justice**
USAO - Southern District of New York
26 Federal Plaza
37th Floor
New York, NY 10278

Kind attention - Ms. Valeen Defendre, Victim Witness Specialist

**To the Honorable Court,**

**Re: United States v. Defendant(s) Christine Hunsicker**
**Case Number 2025R00056 and Court Docket Number 25-CR-00318**

**Victim Impact Statement**

I, Aditi Kothari, respectfully submit this Victim Impact Statement as a victim of the securities fraud committed by Ms. Christine Hunsicker, Founder and former CEO of CaaStle Bee Inc (earlier known as Gwynnie Bee Inc) and hereinafter referred to as '**the Company /CaaStle'.**

I became an investor in the Company led by Ms. Hunsicker and made a sizeable investment of US$ 100,000 based on information of the Company that was presented by Ms. Christine Hunsicker. I have now learnt that all those were fraudulent statements / misrepresentations by Ms. Hunsicker, and she has pleaded guilty to securities fraud.

My investment in CaaStle, was based on information presented to me by Ms. Christine Hunsicker. She made positive representations about the Company's business, growth and financial condition. She further highlighted that the Company was successful and rapidly growing. These representations, together with the Company's investor base as presented to me by Ms. Hunsicker, were material to my decision to make the investment.

After making the investment as well, I spoke and met with Ms. Hunsicker a number of times, between 2019 and 2024. During these meetings Ms. Hunsicker continued to provide assurances regarding the Company's financial health and future prospects. I was repeatedly led to believe that the Company was operating successfully. At various times, I was informed that fundraising efforts were underway and that investors, such as myself, would be provided an exit opportunity. Based on these assurances, I continued to hold my investment in the Company and did not take steps to seek an exit or otherwise protect my position.

I have since learned that all the statements made by Ms. Hunsicker were materially false and misleading statements concerning the Company's finances and operations as well as fund raisings and investors.

Importantly, at no point was I provided with truthful information reflecting the Company's actual financial position, nor did, Ms. Hunsicker come forward with accurate information or truthful documents. Had I been provided with truthful information regarding the Company's financial condition, I would have re-evaluated my investment and considered steps to recover or withdraw my funds at an earlier stage. Instead, I continued to rely on Ms. Hunsicker's representations and assurances, unaware that those representations were false.

**My Submission :**
The financial loss I suffered was a direct consequence of the inaccurate information and assurances and the fraudulent conduct of Ms. Hunsicker. My investment represented a significant and a valuable financial asset, and I lost an opportunity to make informed decisions regarding the protection and disposition of my investment. The loss of my investment resulted from Ms. Hunsicker's fraudulent conduct and concealment of material facts.

I also provide below details of the financial loss the offenses committed by Ms. Christine Hunsicker caused me.

**Details**

| | | | |
|---|---|---|---|
| **1)** | Amount invested | : | **US$ 100,000** |
| **2)** | Type of investment | : | I subscribed to 156,152 shares of Series A Preferred Stock at a price of $0.6404 per share, resulting in an aggregate investment of $100,000 |
| **3)** | Financial loss | : | No amounts were returned, so the full amount of $100,000 is the loss |
| **4)** | Supporting documentation | : | i) Copy of Share certificate for 156,152 Series A Preferred Stock<br>ii) Copy of Bank payment /transaction record evidencing investment |
| **5)** | Mailing address for restitution payment | : | Aditi Kothari<br>[redacted]<br>Mumbai – 400 034<br>Maharashtra, India |

As a result of the fraudulent conduct admitted by Ms. Hunsicker, the value of my investment has been substantially impaired. Had the company's financial position and business performance been truthfully represented, I would not have made the investment. The financial loss represents capital that was invested in reliance upon the integrity of the Company's financial information and management representations.

I respectfully request the Court to consider the financial harm I have suffered and award full restitution for my losses. I invested my funds in good faith and relied on representations that have now been established to be fraudulent.

I, therefore, respectfully ask that I be fully compensated for the loss of US$100,000 directly resulting from Ms. Hunsicker's fraudulent conduct.

Thank you for considering my statement.

Respectfully submitted,

**Aditi Kothari**

# Victim Impact Statement No. 32

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

*v.*

**CHRISTINE HUNSICKER,**

Defendant.

**25 Cr. 318 (JPO)**

---

**VICTIM'S PRO SE MEMORANDUM REGARDING SENTENCING**

**Honorable J. Paul Oetken:**

I write as a victim of the CaaStle fraud to exercise my right to be reasonably heard under 18 U.S.C. § 3771(a)(4) in connection with the sentencing of Christine Hunsicker. I have reviewed both the Government's Sentencing Memorandum and Defendant's Sentencing Memorandum. I respectfully submit this memorandum to bring certain facts to the Court's attention.

I respectfully question the completeness and accuracy of Defendant's mitigation narrative, including any portrayal of her as isolated during the fraud or as having immediately and unconditionally relinquished her remaining authority after confessing. The available evidence does not support a portrayal of Jaswinder Pal Singh as having fully disengaged from CaaStle in 2017 and returned only in December 2024 as an outside stabilizing figure.

The matters set out below concern Singh's continued involvement in CaaStle business and fundraising during the fraud period, share transactions involving Singh and related parties, and Defendant's own conduct following her December 2024 confession. This submission does not ask the Court to determine whether Singh committed any offense. Its narrower purpose is to address

the completeness and accuracy of Defendant's mitigation narrative and the weight the Court should assign to that narrative under 18 U.S.C. § 3553(a).

## I. SINGH REMAINED ACTIVELY INVOLVED AFTER 2017

Defendant's memorandum presents Singh largely as someone who had stepped away from the company. Contemporaneous evidence shows otherwise.

### *A. Categories of Evidence*

I possess multiple categories of evidence showing Singh remained active in CaaStle's business well after the claimed 2017 departure:

- Numerous text messages from Singh spanning 2018 through 2020 that place him firmly in the business.
- An in-person meeting with Singh at the CaaStle office in February 2020, at a location where he kept an office. Defendant herself attended that meeting.
- His continued use of a caastle.com email address in July 2020 is additional evidence inconsistent with a complete operational separation from the company.
- A July 2018 investor update sent from Singh's personal email containing a favorable progress report on CaaStle. In that update he stated that founders and management would "take a bunch" of the additional capital increment. In the context of our communications, I understood that statement as identifying Singh with both CaaStle's founders and its management.

### *B. Representative Text Messages, 2019–2020*

The following are representative excerpts from my text communications with Singh. Full screenshots are available and can be provided as exhibits:

- **October 2019:** Singh discussed Hudson's Bay going private as "good for us," the expansion of the rental platform "across all brands" (including Barneys), current fundraising, and a valuation of approximately $1.3 billion. He offered introductions, invited further investment, and spoke in the first-person plural about the company's direction.
- **November 2019:** Updates on closing Walmart brands as customers and plans for the Macy's launch.

- **December 2019:** Detailed operational points on Ralph Lauren's commitment, rollout of men's services, and the sequencing of launches — language consistent with someone still involved in commercial strategy.
- **February 2020:** Singh arranged an in-person meeting at the CaaStle office ("Do you want to come to the office? Right across from Penn station"). I met him there.
- **April 2020:** In response to a question about credit risk, Singh wrote: "Sorry for being slow. All good. Retailers see this is where they make profit and money. Signing and renewing deals. No debt at all yet."
- **Through mid-2020:** Additional messages continued to address financing, retailer activity, and business progress using "we" and "us," including ongoing talks with retailers such as the CEO of Hudson's Bay Company and matters involving Saks.

These communications are inconsistent with a complete disengagement from CaaStle in 2017. They show Singh remaining knowledgeable about and actively discussing commercial transactions, fundraising, valuation, and operations during 2019 and 2020. They therefore undercut any broad portrayal of Singh as a complete outsider to CaaStle's business during that portion of the fraud period. To the extent Defendant's mitigation submission portrays her as having no meaningful interaction with Singh during this period, the communications provide relevant contrary context.

### *C. Victim Impact Statements Confirming an Ongoing Fundraising Role*

Three victim impact statements filed in this case further undermine the "left in 2017" account:

- **Statement No. 9 (FU Mingxia / Genesis Capital):** $10 million invested across February 2020, April 2020, and February 2021. Each investment followed discussions with Hunsicker and/or Singh and relied on financial information and personal assurances that the investor now knows were fabricated.
- **Statement No. 12 (Owen P. Honors):** Singh personally convinced the investor's family — who invested well over $30 million — to put money into CaaStle, leveraging a long-standing relationship, and did not disclose that he was no longer a board member.
- **Statement No. 16 (Eric J. Lee):** Singh "did all of the marketing to fundraise for the company to me and many people I know even into the later years while the fraud was being perpetrated," including after leaving a formal role.

These statements describe Singh in an active capital-raising role during the years the false financials were being used.

## II. SHARE TRANSACTIONS INVOLVING SINGH

### *A. Sales to Investors in 2018*

The January 2026 lawsuit filed against CaaStle and related parties alleges:

> 168. While in possession of material information regarding CaaStle's true affairs, defendants Hunsicker and Singh made a profit through sales of their shares to investors. In early 2018, while claiming a valuation of $5.25 per share, they sold shares to investors at $4.65 per share. At a minimum, plaintiff Beck purchased some of these shares.

I include this allegation not to ask the Court to determine Singh's liability, but because it provides context for any portrayal of him solely as a person who purchased or supported CaaStle stock rather than as a person who also obtained liquidity through sales of his holdings.

### *B. Repurchases in October 2024*

In October 2024, while Defendant remained CaaStle's CEO, the company repurchased approximately $6 million of Singh's shares. Shortly afterward, it purchased approximately $1.75 million of shares from a trust for Singh's wife. In early December 2024, Singh requested to sell additional shares.

These transactions occurred after investor inquiry and before Defendant's December 8, 2024 confession. Their timing and size are relevant to the Court's assessment of Defendant's exercise of authority during a period of escalating investor scrutiny. Their significance depends in part on the evidence establishing Defendant's role in approving or directing them.

## III. THE POST-CONFESSION PERIOD: LEVERAGE AND NON-DISCLOSURE

### *A. The Sequence of Events*

Following Defendant's confession on December 8, 2024, and according to the bankruptcy trustee's complaint and public reporting, the following sequence occurred:

- Director Scott Callon asked Defendant to resign. She did not simply step down. She agreed to leave the board only if Singh — who at that time held no official position — took her seat. Callon has stated that he had "no options to remove Christine from these roles unilaterally" and therefore agreed.
- The reconstituted board, consisting of Callon and Singh, retained Defendant as nominal CEO and elected not to disclose what had happened to employees or investors.
- Earlier counsel, Morgan Lewis, had recommended immediate disclosure to authorities. That recommendation was not followed. Cravath was subsequently engaged.
- The board concluded at a January 3, 2025 meeting that CaaStle lacked a viable independent future.
- Disclosure to investors and Defendant's formal resignation as CEO occurred only in mid-March 2025, after the criminal investigation became known.

These events followed within weeks of the share transactions described in Section II.B above.

### *B. Defendant Retained and Exercised Leverage*

By conditioning her board resignation on Singh taking her seat, Defendant used her remaining governance authority to influence the composition of the board that subsequently managed CaaStle's post-confession response. That fact does not, standing alone, establish that Defendant controlled or directed the reconstituted board's later decisions. It is, however, inconsistent with any portrayal of her board departure as immediate and unconditional. Defendant influenced the composition of the very body that then controlled the post-confession response — including the decision to withhold disclosure for approximately three months.

## IV. WHY THESE FACTS MATTER AT SENTENCING

Defendant's mitigation narrative is incomplete in two respects, each bearing on a factor the Court must weigh under 18 U.S.C. § 3553(a).

First, the nature and circumstances of the offense. Defendant was not operating in the degree of isolation the defense suggests. Singh remained involved in CaaStle's business and capital-raising throughout the fraud period, and significant share transactions benefiting him occurred as investor scrutiny intensified. That context bears on how the Court understands the environment in which the offense took place.

Second, the extent of Defendant's acceptance of responsibility. After confessing, Defendant did not immediately and unconditionally relinquish control. She conditioned her departure from the board on Singh's return and thereby influenced the composition of the board that then chose a three-month period of non-disclosure. A complete acceptance of responsibility includes an accurate account of one's role in the events that followed the initial disclosure.

I respectfully ask the Court to consider these circumstances, together with the multi-year duration of the fraud, the magnitude of the losses suffered by victims, and all other factors under 18 U.S.C. § 3553(a), in determining a sentence that reflects the seriousness of the offense and promotes respect for the law.

Respectfully submitted,

______________________________

**Jean-Paul St. Germain**
Etna, NH 03750
Dated: August 12, 2026

# Victim Impact Statement No. 33

**U.S. Department of Justice**
USAO - Southern District of New York
26 Federal Plaza
37th Floor
New York, NY 10278

Kind attention - Ms. Valeen Defendre, Victim Witness Specialist

**To the Honorable Court,**

**Re: United States v. Defendant(s) Christine Hunsicker**
**Case Number 2025R00056 and Court Docket Number 25-CR-00318**

**Victim Impact Statement**

I, Shuchi Kothari, respectfully submit this Victim Impact Statement as a victim of the securities fraud committed by Ms. Christine Hunsicker, Founder and former CEO of CaaStle Bee Inc (earlier known as Gwynnie Bee Inc) and hereinafter referred to as '**the Company /CaaStle'.**

I became an investor in the Company led by Ms. Hunsicker and made a sizeable investment of US$ 250,000 based on information of the Company that was presented by Ms. Christine Hunsicker. I have now learnt that all those were fraudulent statements / misrepresentations by Ms. Hunsicker, and she has pleaded guilty to securities fraud.

My investment in CaaStle, was based on information presented to me by Ms. Christine Hunsicker. She made positive representations about the Company's business, growth and financial condition. She further highlighted that the Company was successful and rapidly growing. These representations, together with the Company's investor base as presented to me by Ms. Hunsicker, were material to my decision to make the investment.

After making the investment as well, I spoke and met with Ms. Hunsicker a number of times, between 2019 and 2024. During these meetings Ms. Hunsicker continued to provide assurances regarding the Company's financial health and future prospects. I was repeatedly led to believe that the Company was operating successfully. At various times, I was informed that fundraising efforts were underway and that investors, such as myself, would be provided an exit opportunity. Based on these assurances, I continued to hold my investment in the Company and did not take steps to seek an exit or otherwise protect my position.

I have since learned that all the statements made by Ms. Hunsicker were materially false and misleading statements concerning the Company's finances and operations as well as fund raisings and investors.

Importantly, at no point was I provided with truthful information reflecting the Company's actual financial position, nor did, Ms. Hunsicker come forward with accurate information or truthful documents. Had I been provided with truthful information regarding the Company's financial condition, I would have re-evaluated my investment and considered steps to recover or withdraw my funds at an earlier stage. Instead, I continued to rely on Ms. Hunsicker's representations and assurances, unaware that those representations were false.

**My Submission :**
The financial loss I suffered was a direct consequence of the inaccurate information and assurances and the fraudulent conduct of Ms. Hunsicker. My investment represented a significant and a valuable financial asset, and I lost an opportunity to make informed decisions regarding the protection and disposition of my investment. The loss of my investment resulted from Ms. Hunsicker's fraudulent conduct and concealment of material facts.

I also provide below details of the financial loss the offenses committed by Ms. Christine Hunsicker caused me.

**Details**

| | | | |
|---|---|---|---|
| **1)** | Amount invested | : | **US$ 250,000** |
| **2)** | Type of investment | : | 48,543 Series A 11 Preferred Stock at a price of $5.15 per share, resulting in an aggregate investment of $250,000 |
| **3)** | Financial loss | : | No amounts were returned, so the full amount of $250,000 is the loss |
| **4)** | Supporting documentation | : | i) Copy of Share certificate for 48,543 Series A 11 Preferred stock allotted<br>ii) Copy of Bank payment /transaction record evidencing investment |
| **5)** | Mailing address for restitution payment | : | Ms. Shuchi Kothari<br>[redacted],<br>Mumbai – 400 025,<br>Maharashtra, India |

As a result of the fraudulent conduct admitted by Ms. Hunsicker, the value of my investment has been substantially impaired. Had the company's financial position and business performance been truthfully represented, I would not have made the investment. The financial loss represents capital that was invested in reliance upon the integrity of the Company's financial information and management representations.

I respectfully request the Court to consider the financial harm I have suffered and award full restitution for my losses. I invested my funds in good faith and relied on representations that have now been established to be fraudulent.

I, therefore, respectfully ask that I be fully compensated for the loss of US$250,000 directly resulting from Ms. Hunsicker's fraudulent conduct.

Thank you for considering my statement.

Respectfully submitted,
SKothari
**Shuchi Kothari**